SAMUEL WATERS *against* JOHN H. LEECH.

ERROR *to Pulaski Circuit Court.*

The power conferred, previous to the session of the General Assembly of 1840, upon the Corporation of Little Rock, could only be exercised in furtherance of the legitimate object of its charter, viz: the preservation of good order in the city.

This power, so limited, ought to be *reasonably* exercised.

The Town Council might impose a reasonable fine for " misdemeanors, disorders, neglects, and nuisances committed within the limits of the city ;" but theatrical performances cannot be embraced under either of these heads when they are legalized by the payment of the tax of twenty dollars per month imposed by the city corporation.

Therefore, so much of the tenth section of chapter 5, of the revised ordinances of the city of Little Rock, adopted February 22d, 1839, as declares that the City Constable " shall be entitled to receive of the owners or exhibitors of every theatre, &c., for each night of his attendance the sum of two dollars," is repugnant to the charter of the corporation of the city of Little Rock.

This was a suit brought by John H. Leech, City Constable of Little Rock, against Sam Waters, before Hawkins, Justice, where he obtained judgment for the sum of $25 00, upon an account rendered January 21st, 1840, for official services, (as directed by an ordinance,) in attendance at theatre ten nights, at $2 50 per night, from which judgment the plaintiff in error appealed to the Pulaski Circuit Court.

Upon the trial in the Circuit Court it was admitted that the defendant in error attended at the theatre in the City of Little Rock, of which the plaintiff in error was the owner or exhibitor, ten nights in the month of January, A. D. 1840, as charged in his bill filed before the Justice, and that the defendant in error was City Constable of Little Rock during that time. It was also admitted that the plaintiff in error was, during the whole of such time regularly licensed to keep and exhibit such theatre, in accordance with the ordinance of the city then in force, and that the defendant in error did not attend the theatre at the request of the plaintiff in error.

The ordinances of the city of Little Rock, above referred to, which were relied upon, and adduced upon the trial before the Circuit Court, sitting as a Jury, and made a part of the record, in the bill of exceptions, are as follows: Section 9, of chapter 22, under the head of Rev-

enue, compiled and promulgated in March, A. D. 1839, and in force on the 21st of January, A. D. 1840, provides that there shall be levied, as city tax, the sum of twenty dollars, for each month, on every circus, show, menagerie, theatre, or exhibition kept, exhibited, or opened in the city;" and section 10, of chapter, under the head of Constable, adopted February 22, 1839, and in force on the 21st January 1840, provides that " it shall be his (the Constable of the city) duty to attend every theatre, menagerie, circus, exhibition and show kept, opened or exhibited in this city, on every night of such exhibition or performance, and to enforce order and suppress riot and tumult, for which services he shall be entitled to receive of the owners or exhibitors, for each night of attendance, the sum of two dollars and fifty cents."

On the trial in the Circuit Court the judgment of the Justice was affirmed.

ASHLEY & WATKINS, for plaintiff in error:

It is not for the amount in controversy in this particular case, but against the monstrous injustice of the principle involved, that the plaintiff in error has sued out and prosecutes this writ. A principle by the practical operation of which the plaintiff in error is virtually taxed by the corporation of Little Rock, in addition to the State and county revenue, which he pays in common with other citizens, upwards of one thousand dollars per annum, that is to say, at the rate of two hundred and fifty dollars a year for a city license, and seven hundred and eighty-two dollars and fifty cents, in the course of a year, by way of fees to the City Constable, and which, if once admitted, might be carried out and increased to an indefinite extent, to the entire prohibition of not only the theatre, of which the plaintiff in error is the owner or exhibitor, but of every menagerie, circus, exhibition and show, though sanctioned by law and not of an immoral nature or tendency.

It behooves us then to inquire if there be any thing in the act or acts incorporating the city of Little Rock, which invests the Mayor and Aldermen with these and other extraordinary powers, which they have assumed, in regard to taxation, and if so, whether the Constitu-

tion of the State, confers upon the General Assembly the right to make any such delegation of power to any corporation whatever.

I take it to be the broad scope and meaning of the Constitution, on the important subject of revenue, that all revenue shall be raised by *ad valorem* taxation, and no one species of property, subject to taxation, to be taxed higher than any other species of property of equal value. The only exception to this is that the General Assembly have power to tax merchants, pedlers, and privileges, in such manner as may be from time to time prescribed by law. The obvious reason for such an exception is, that merchants having the ability to be, and hawkers and pedlers, being in their nature transitory, might effectually evade taxation unless some other mode of taxation, as by way of license, be resorted to; and privileges being supposed to mean some other incorporeal right incapable of ad valorem estimation.

It is immaterial whether the term revenue, as used in the Constitution, be construed as applicable to the State revenue. This court have decided, in the case of *Gibson vs. the county of Pulaski,* that to keep a stud horse is not a privilege, within the meaning of the Constitution, upon which an unequal and onerous tax could be imposed, or, in other words, that every citizen has the right to follow any pursuit or occupation for a livelihood, so long as it is not prohibited by law, without being taxed to prohibition.

It may be that the several counties, cities, or towns, by virtue of their incorporation, may have the right to raise any amount of revenue commensurate with their wants, but in any event, that revenue must be raised by an ad valorem tax, upon every species of property from which a tax may be collected, (with the addition in the case of counties of a poll tax,) as the most fair and equitable mode of taxation that could be desired, in accordance with the doctrine of equality of rights and equality of burthens which pervades our Constitution.

By applying these principles to the case now before the court, it will be perceived that the charge made on the defendant of $2 50 per night, for alleged services, rendered to the plaintiff in error, *nolens volens,* is unauthorized by law, and unfounded in justice. It is useless to disguise such a charge under the specious name of *fees:* the plaintiff in error holds it to be a tax of the most enormous kind.

Waters *against* Leech.

But the defendant in error contends that the act incorporating the city of Little Rock does not confer upon the Mayor and Aldermen the least shadow of right to make any ordinances or by-laws whatever, which could authorize the defendant, as City Constable, to exact of the plaintiff in error the sum of $2 50 per night. We take it to be the settled rule of construction of charters of corporations, viewed, as they are, with jealousy by our Constitution, that no corporate powers can be exercised, or in any other manner, save as they are conferred by the act of incorporation, or arise by necessary implication. *The People vs. the Manhattan Co.*, 9 *Wend.* 351; *the People vs. Utica Insurance Co.*, 15 *J. R.* 382.

The act approved February 21st, 1838, expressly repealing all the corporate powers created by the original act of November 2nd, 1835, and being substantially an entire new act of incorporation, does not confer upon the Mayor and Aldermen any such right. Sec. 4, of the same act, gives to them the power to " make any by-laws, ordinances, &c., as to them may appear necessary for the good order and government of the city, and the inhabitants thereof, and to make, limit, and impose reasonable fines and amercements for all misdemeanors, disorders, &c., for which the laws of the State have not provided an ample remedy and penalty." This obviously refers to the criminal jurisdiction (which by the way it does not confer) over petty offences. It cannot be contended that, for the sake of preserving order, the corporation are authorized by it to send an officer specially to stand guard over a man's premises, and charge him for being ready to render him a service, which, as an officer of peace, it is his sworn duty to do under all circumstancess The plaintiff in error thinks that there is some other peace beside the peace of the city, and that is the peace of the State, and that when he pays State and county taxes, in common with other citizens, and more especially, when he pays a license to the city at the rate of $240 a year, he is entitled to the protection of the laws, if necessary, in the pursuit of a lawful calling, without having to pay so much extra, by way of peace offering.

Sec. 7, of the same act, purports to give the Mayor and Aldermen "the exclusive power of taxing or licensing dram-shops and other

15

drinking establishments, &c., and to lay and collect a tax, for city purposes, on all taxable property situate therein according to the value thereof, &c., and *a poll tax,* never to exceed, &c., and to fix the fees of Recorder and Constable, and to tax trading boats, &c.;" which are all the powers it gives to the Mayor and Aldermen on the subject of taxation, not one of which has the remotest bearing to authorize the passage of any ordinance which could entitle the defendant to a recovery against the plaintiff in error, upon the state of facts, as shown by the record in this case.

Should the court entertain any doubts as to whether these sections of the ordinances of the city, referred to in the bill of exceptions, can be made to constitute a part of the record, by consent of the parties, the plaintiff in error does not conceive that the entire omission of the ordinances can prejudice this case in any way whatever. This court decided in the case of *Lenox vs. Pike, and others,* that the paper purporting to be a bill of exceptions, setting out the evidence, formed no part of the record. In this case the facts, as set out in the bill of exceptions, do all properly appear of record, and are certified by the Judge to be all the evidence in the case. The fact that such ordinances existed, is admitted, and stated of record; the ordinances themselves being matters of law, could not be entered of record unless specially pleaded. But the plaintiff in error stands upon higher ground; and in view of the doctrine established by this court, of affirming every judgment of an inferior court, unless it manifestly appears to be contrary to law, he insists that the facts which do appear upon the record, show the judgment, under the law of the land, to be erroneous; and that the corporation of Little Rock, have not the power, by law, to pass an ordinance which, by any possibility, could justify a recovery under such a state of facts.

DICKINSON, *Judge,* delivered the opinion of the court:

There is but one question involved in the decision of this case: Had the corporation of the city of Little Rock power and authority to pass an ordinance requiring the city Constable to attend at the Theatre during its performance, and allowing a compensation therefor, to be paid by the proprietor or exhibitor? The corporation of

the city of Little Rock possesses only such legislative powers as are prescribed by the charter from which it derives its existence. It exercises a delegated power only; and must in all its acts, confine itself strictly within the limits of its authority. The question then presents itself directly: What are those powers as connected with the subject immediately before us? It is of no consequence as to the period at which a charter to the citizens of Little Rock was granted, or what amendments were made thereto prior to the 22nd February, 1838, when an act "entitled an act supplementary and amendatory of an act to incorporate the city of Little Rock, approved November 5, 1835," was passed, of which the 4th section declared " that the said Mayor and Aldermen, or a majority of them, shall have full power and authority from time to time, and at all times hereafter, to hold a common council in said city at such places as they may designate, and to make such by-laws, ordinances and regulations in writing, not repugnant to the constitution and laws of this State, and the same to enforce, revoke or alter, as to them may appear necessary for the good order and government of the city and the inhabitants thereof; and to make, limit and impose reasonable fines and amercements for all misdemeanors, disorders, neglects and nuisances, committed within the limits of said city, upon persons committing them therein, and for which the laws of the State have not provided an ample remedy." The third section of the same act makes various provisions, all referring specially to " the better preservation of order and the enforcement of the laws of said city.

These are the only legislative powers with which the corporation is invested. The power to make by-laws is given to corporate bodies to enable them to fulfil the purposes of the institution, and must necessarily be confined to such objects and persons as are specially defined in the charter.

The corporate powers are not only limited, but must be reasonably exercised in sound discretion, and not only strictly within the limits of the charter, but in perfect subordination to the constitution and the general law of land, and the rights dependent thereon; and that power, if properly exercised, may be enforced by just and competent penalties.

These are the rules by which all corporate bodies must be governed, and it remains for us to determine whether the ordinance or by-law, by which the plaintiff was required to pay two dollars and fifty cents on each exhibition to the defendant in error, is properly within the limits of the grant to the corporation. By one ordinance they declared that " there shall be levied and collected as a city tax the sum of twenty dollars for each month on every circus, show, menagerie, theatre, or exhibition kept, opened, or exhibited in this city." Subsequently they passed another ordinance or by-law that " it shall be his (the Constable of the city) duty to attend every theatre, menagerie, circus, exhibition and show kept, opened, or exhibited in this city, on every night of such exhibition or performance, and to en-force order, and suppress riot and tumult, for which service he shall be entitled to receive of the owner or exhibitor, for each night of his attendance, the sum of two dollars and fifty cents," both of which said ordinances were in force at the same time. Whether the corporation had power to impose the tax of twenty dollars we shall neither inquire into or determine as no objection is raised to it. That under the charter the corporation had power to make proper and reasonable by-laws, ordinances, and regulations for the preservation of the good order and government of the city, and its inhabitants, cannot be doubted. But we are at a loss to determine by what name the imposition of the two dollars and fifty cents to be paid to the City Constable shall be called or known. The exhibition or performance mentioned certainly cannot be considered as either a misdemeanor or disorder, a neglect or nuisance; for, by the payment of the twenty dollars per month, the corporation had rendered it legal, and could therefore impose no fine or amercement unless there had been an actual violation of some known and established law of the land. It cannot be considered as a tax, because this power is limited to taxable property situate within the city, to a poll-tax, upon trading boats vending produce and merchandize at the landing of said city; and to licensing dram shops or drinking establishments. We have seen that the object of the charter is the preservation of good order within the city, but that the power by which this is to be effected is not only limited, but the means by which the funds are to be raised to meet

Waters *against* Leech.

the expenses of so doing are expressly defined and pointed out; and that the exercise of these powers must not only be confined to such objects and purposes as are specially defined in the charter, but that they must be reasonably exercised. As previously remarked, no objection is raised to the twenty dollars imposed by the first ordinance. But we are at a loss to know by what power, after authorizing the exhibition at the theatre, and thereby rendering it lawful, an additional imposition of two dollars and fifty cents for each performance should be ordered to be paid to the City Constable by the owner or exhibitor, who is no party to the contract, and who did not require the services of the Constable. Is it reasonable? The tax of twenty dollars per month is two hundred and forty per annum, and if the performance should continue during the year, it would add to the emoluments of the defendant in error seven hundred and thirty-two dollars and fifty cents, for which the other would derive no benefit or consideration. Suppose the corporation was to pass an ordinance that the City Constable should attend every day upon each and every dram-shop, or other drinking establishments, and that the owner or keeper thereof should pay such Constable two dollars and fifty cents per day therefor, would such an ordinance be considered within the proper and legitimate authority of the charter? Would this be a reasonable exercise of power? If the principle is admitted that under the general power of providing by ordinances and by-laws for the preservation of good order within the limits of the city, the corporation can do this, where, we would inquire, is the limit to their authority? They may, with the same propriety, make his duty extend to standing guard over dram-shops and drinking establishments, and at the stores of the citizens, thereby rendering those laws and ordinances oppressive and injurious, under the specious pretence of suppressing riot or tumult which might or might not take place. It cannot be considered as a fee to the City Constable for services performed, but an indirect tax levied upon the plaintiff in error, in contravention of the powers of the charter. If, in the imposition of a fine or amercement for the commission of a misdemeanor or disorder committed within the limits of the city, and for which the laws of the State have not provided an adequate remedy, the services of the City Constable should be necessary in serving of

Waters *against* Leech.

process, &c., and the party prosecuted is convicted, then indeed he may become liable for the fees. And if a neglect of some duty is to be enforced, or a nuisance removed, and the services of the Constable required, he must look to the corporation for compensation. And it is for the purpose of meeting such expenditures that a tax is authorized to be levied. But it surely would not be contended, that if a party was prosecuted for the supposed violation of some by-law or ordinance and acquitted, that he could be rendered liable to pay the Constable his fees. And yet this would be equally as just, as reasonable, and as much within the limits of the charter, as to allow the City Constable two dollars and fifty cents for his attendance at each and every performance at a theatre. There can be no doubt, in our opinion, that the corporation transcended their powers, and that so much of section 10, of chapter 5, of the revised ordinances of the city of Little Rock, adopted February 22d, 1839, as declares that the City Constable " shall be entitled to receive of the owners of exhibitors for each night of his attendance, the sum of two dollars and fifty cents," is repugnant to the charter of the corporation of the city of Little Rock.

The judgment of the Circuit Court must therefore be reversed with costs.