THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD W. STEELE, Plaintiff in Error.*

*Opinion filed December 17, 1907.*

1. CONSTITUTIONAL LAW—*courts determine what are the subjects for the exercise of police power.* While the legislature may determine when the exigency exists for the exercise of its police power, it is for the courts to determine what are the subjects for the exercise of such power.

2. SAME—*business of conducting theater is a private one.* The legislature has power to regulate a theater as a place of public amusement and may require a license fee for conducting the business, but the fact that a license fee may be required does not change the character of the business from a private one to one impressed with a public interest.

3. SAME—*extent to which legislature may regulate theater business.* The legislature has the same power to regulate the theater business as it has to regulate any other private business, and no more, and may interfere with such business only to the extent that the public health, safety, morals, comfort and general welfare may require.

4. SAME—*what is essential to validity of act regulating lawful private business.* To sustain an act regulating a lawful private business the act must tend in some degree to the prevention of offenses or the preservation of the public health, morals, safety or

*With this case is decided the consolidated case of *People* v. *Altschul,* No. 5744.

welfare, and it must appear that such end was the one actually intended and that there is some connection between that end and the provisions of the law.

5. SAME—*the act of 1907, to prevent "scalping" in the sale of theater tickets, is unconstitutional.* The act of 1907, (Laws of 1907, p. 269,) to prevent speculating in theater tickets, commonly called "scalping," has no relation to the public health, safety, morals or welfare, and is unconstitutional in that it arbitrarily deprives persons in the theater business, and brokers engaged in selling theater tickets, of liberty and property without due process of law. (*Burdick* v. *People,* 149 Ill. 600, distinguished.)

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

MORAN, MAYER & MEYER, for plaintiff in error:

The statute in question is unconstitutional and void. Ill. const. art. 1, secs. 1, 2, 14; U. S. const. 14th amendment; *Ex parte Quarg,* 149 Cal. 79.

The right of citizens to pursue an ordinary calling is a part of their right of liberty and property, and any law which prevents or abridges this privilege is obnoxious to the constitutions of this State and the United States. *Bessette* v. *People,* 193 Ill. 334; *Chicago* v. *Netcher,* 183 id. 104; *Eden* v. *People,* 161 id. 296; *Ritchie* v. *People,* 155 id. 98; *Railway Co.* v. *Jacksonville,* 67 id. 37; *Ramsey* v. *People,* 142 id. 380; *Coal Co.* v. *People,* 147 id. 66; *Frorer* v. *People,* 141 id. 171; *Wice* v. *Railway Co.* 193 id. 356; *Gunning System* v. *Chicago,* 214 id. 634; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Allgeyer* v. *Louisiana,* 165 id. 578; *Patterson* v. *Bark Eudora,* 190 id. 169.

The theater business is a private business, and is not subject to regulation in the sense of railroads, telephone companies and other business impressed with the public employment and public use. *Gaylord* v. *Sanitary District,* 204 Ill. 576; *Commission Co.* v. *Live Stock Exchange,* 143 id. 210; *Ex parte Quarg,* 149 Cal. 79; *Collister* v. *Hayman,* 183 N. Y. 250; *People* v. *Flynn,* 100 N. Y. Sup. 31; *Clif-*

*ford* v. *Brandon,* 2 Campb. (Eng. C. L.) 358; *Horney* v. *Nixon,* 213 Pa. 20; *Purcell* v. *Daily,* 19 Abb. N. C. 301; *Pearce* v. *Spaulding,* 12 Mo. App. 141.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (JAMES J. BARBOUR, of counsel,) for the People:

The evils of theater ticket speculation sought to be prevented by the law under consideration may be taken judicial notice of. *Weber* v. *Chicago,* 148 Ill. 313; *Hicks* v. *Silliman,* 95 id. 255; *Nash* v. *Claussen,* 163 id. 409; *Railroad Co.* v. *Dey,* 82 Iowa, 312; 46 L. R. A. 442.

A theater is an institution affecting public interests, and subject to legislative control as a part of the police power. *Baylies* v. *Curry,* 128 Ill. 292; *Cecil* v. *Green,* 161 id. 265; *Donnell* v. *State,* 48 Miss. 680; *Greenberg* v. *Western Turf Ass.* 180 Cal. 360; 148 id. 126; 204 U. S. 359.

The cases of *Munn* v. *People* are the leading cases on police power, and the doctrine therein laid down is the doctrine relied upon in support of the right to the exercise of police power in relation to theaters. *Munn* v. *People,* 69 Ill. 80; 94 U. S. 113.

The business of ticket scalping is subject to control, and even suppression, under police power. *Burdick* v. *People,* 189 Ill. 600; *Cincinnati* v. *Brill,* 7 Ohio, 534.

Any private enterprise may become affected with public interests and regulated accordingly. *Inter-Ocean Co.* v. *Associated Press,* 184 Ill. 438; *Stock Exchange* v. *Board of Trade,* 127 id. 153.

Business that becomes harmful, or a cloak for abuses, frauds, over-reaching, oppression, extortion or swindling, may become the subject of regulation by the State. Brannon on Fourteenth Amendment, 230; *Lasher* v. *People,* 182 Ill. 226; *Water Co.* v. *Fergus,* 178 id. 571; *Spiegler* v. *Chicago,* 216 id. 114; *Ruggles* v. *People,* 91 id. 256; *Hawthorn* v. *People,* 109 id. 302; *Mathews* v. *People,* 202 id.

389; Cooley's Const. Lim. 743; *People* v. *King*, 110 N. Y. 418; *Lake View* v. *Rose Hill Cemetery*, 70 Ill. 191; *Douglas* v. *People*, 225 id. 536; *Ward* v. *Farwell*, 137 id. 593.; *Cole* v. *Paul*, 103 id. 30; 8 Cyc. 1110, 1115; *People* v. *Budd*, 117 N. Y. 1.

Mr. JUSTICE DUNN delivered the opinion of the court:

These cases have been submitted together by agreement. The plaintiffs in error were convicted in the municipal court of Chicago of violations of the act approved June 4, 1907, "to prohibit the sale of tickets for more than the price printed thereon, for theaters, circuses and places of amusement, and declaring same a misdemeanor, and fixing the penalties therefor, and to repeal a certain act herein named." (Laws of 1907, p. 269.) Writs of error have been sued out of this court, and the only question presented is the constitutionality of that act.

It is conceded that the plaintiff in error Steele, being the manager of a theater, has violated section 1 of the act by selling a ticket not having printed thereon, "This ticket can not be sold for more than the price printed hereon," and that plaintiff in error Altschul has violated section 2 of the act by demanding and receiving for the sale of a ticket a price in excess of the advertised or printed rate therefor, and has violated section 3 by establishing an agency for the sale of tickets at a price greater than that asked at the box-office and in excess of the advertised or printed rate therefor. It is therefore conceded that if the act is a valid enactment the judgments of the municipal court should be affirmed.

The particular constitutional limitations which plaintiffs in error contend are infringed are contained in sections 1, 2 and 14 of article 2 of the constitution. Those sections are as follows:

"Sec. 1. All men are by nature free and independent, and have certain inherent and inalienable rights,—among

these are life, liberty, and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed.

"Sec. 2. No person shall be deprived of life, liberty or property, without due process of law.

"Sec. 14. No ex post facto law, or law impairing the obligation of contracts, or making any irrevocable grant of special privileges or immunities, shall be passed."

The contention of plaintiffs in error is, that the right to engage in any lawful business, and the right to enter into any contracts proper and convenient for carrying on a lawful business, are property; that the business of selling theater tickets and that of conducting a theater are lawful; that the act in question takes away the right of the ticket seller and the freedom of contract of the manager of the theater, and so deprives them of their property without due process of law, and of the liberty of following such avocation as may seem best to them, and of entering into such contracts as they may deem proper and essential therein.

The right of the State to regulate theaters and all places of public amusement is universally recognized. It is important that places where people assemble in numbers should be subject to regulations for the preservation of peace, good order, morality and safety. In respect of the power of the legislature to tax or license it, the business of conducting a theater is in no different condition from any other business. The legislature may impose a tax upon or require a license fee for the exercise of any avocation. "The constitution has not prohibited the General Assembly from imposing or authorizing the imposition of the duty to procure a license to pursue any calling, nor has it limited the power or limited its exercise." (Wiggins Ferry Co. v. City of East St. Louis, 102 Ill. 560.) The legislature has the same authority over the theater business as over any other lawful private business, and no more. Besides the requirement

of a license, it may interfere with and regulate the business to the extent that the public health, safety, morality, comfort and general welfare require. This is the exercise of the police power which this court has said may be said to be that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society. (*Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191; *City of Chicago* v. *Gunning System,* 214 id. 628.) In *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 Ill. 37, it was held that if the law prohibits that which is harmless in itself, or requires that to be done which does not tend to promote the health, comfort, safety or welfare of society, it will in such case be an unauthorized exercise of power and it will be the duty of the courts to declare such legislation void. In *Ritchie* v. *People,* 155 Ill. 98, it was said (p. 110): "The police power of the State is that power which enables it to promote the health, comfort, safety and welfare of society. It is very broad and far reaching but is not without its limitations. Legislative acts passed in pursuance of it must not be in conflict with the constitution and must have some relation to the ends sought to be accomplished,—that is to say, to the comfort, welfare or safety of society. Where the ostensible object of an enactment is to secure the public comfort, welfare or safety, it must appear to be adapted to that end. It cannot invade the rights of person and property under the guise of a mere police regulation when it is not such in fact; and where such an act takes away the property of a citizen or interferes with his personal liberty, it is the province of the courts to determine whether it is really an appropriate measure for the promotion of the comfort, safety and welfare of society."

While the legislature may determine when the exigency exists for the exercise of the police power, it is for the courts to determine what are the subjects for the exercise of this power, and it is necessary that the act should have

some reasonable relation to the subjects of such power. The court must be able to see that the act tends in some degree to the prevention of offenses or the preservation of the public health, morals, safety or welfare. It must be apparent that such end is the one actually intended, and that there is some connection between the provisions of the law and such purpose. *City of Chicago* v. *Netcher,* 183 Ill. 104; *Bessette* v. *People,* 193 id. 334.

"Liberty, as that term is used in the constitution, means not only freedom of the citizen from servitude and restraint, but is deemed to embrace the right of every man to be free in the use of his powers and faculties and to adopt and pursue such avocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare." (*Braceville Coal Co.* v. *People,* 147 Ill. 66; *Frorer* v. *People,* 141 id. 171; *City of Chicago* v. *Netcher, supra.*) "The right of every man to choose his own occupation, profession or employment, though not expressly guaranteed by the constitutions, is included in the right to the pursuit of happiness." (Black on Constitutional Law, p. 411.) The privilege of contracting is both a liberty and a property right and is protected by the constitution. *Ritchie* v. *People, supra; Bailey* v. *People,* 190 id. 28; *Booth* v. *People,* 186 id. 43.

The statute prohibits the sale of a theater ticket at a price above the printed rate and prohibits the establishing of an agency for such sale. There is nothing immoral in the sale of theater tickets at an advance over the price at the box-office. Such sale is not injurious to the public welfare and does not affect the public health, morals, safety, comfort or good order. It does not injure the buyer or the proprietor of the theater. The buyer purchases voluntarily. He is under no compulsion. If the conducting of a theater is a mere private business, there is no reason why the proprietor may not sell the tickets when and where, at what prices and on what terms he chooses. It is insisted,

however, that the operation of a theater is a business af-
fected with a public interest and therefore is subject to con-
trol by the legislature. It is a well established doctrine that
where the owner of property has devoted it to a use in
which the public has an interest, he, in effect, grants to the
public an interest in such use, and must to the extent of
that interest submit to be controlled by the public for the
common good, so long as such use is maintained. (*Munn
v. Illinois*, 94 U. S. 113; *Inter-Ocean Co.* v. *Associated
Press*, 184 Ill. 438; *New York and Chicago Stock Ex-
change* v. *Board of Trade*, 127 id. 153.) The fact that a
license is required does not make the business a public
employment. The cases where a business has been re-
garded as affected with a public interest have been cases
where the person or corporation engaged in the business
was acting under a franchise or cases affecting trade and
commerce, where either there has been a virtual monopoly
of means of transportation or methods of commerce, (*Munn
v. Illinois, supra,*) or where, from the nature of the busi-
ness, in its regular course, the person carrying it on was
necessarily entrusted with the property or money of his
customers, (*Hawthorn* v. *People*, 109 Ill. 302; *Meadow-
croft* v. *People*, 163 id. 56; *Lasher* v. *People*, 183 id. 226;)
or where the business has been conducted in such a manner
that the public and all persons dealing in the products con-
cerned have adapted their business to the methods used, so
that such methods have become necessary to the safe and
successful transaction of business. *New York and Chicago
Stock Exchange* v. *Board of Trade, supra; Inter-Ocean
Co.* v. *Associated Press, supra.*

In *Millett* v. *People*, 117 Ill. 294, where it was claimed
that the business of mining for coal was affected with a
public use, and subject, therefore, to regulation by law,
the court said (p. 303) : "It cannot be claimed that mining
for coal was by the common law affected with a public use
and therefore specially regulated by law, like the business

of inn-keepers, common carriers, millers, etc., and in our opinion it is not, like the business of public warehousing, within the principle controlling such classes of business. The public are not compelled to resort to mine owners any more than they are compelled to resort to the owners of wood or turf, or even to the owners of grain, domestic animals, or to those owning any of the other ordinary necessaries or conveniences of life which form a part of the commerce of the country."

In *Horney* v. *Nixon,* 213 Pa. 20, the plaintiff brought a suit in trespass against the defendant for wrongfully refusing to permit him to occupy a seat which he had purchased for a theatrical performance. The court held that his only remedy was an action for the breach of the contract, and said: "The proprietor of a theater is a private individual engaged in a strictly private business, which, though for the entertainment of the public, is always limited to those whom he may agree to admit to it. There is no duty, as in the case of a common carrier, to admit everyone who may apply and be willing to pay for a ticket, for the theater proprietor has acquired no peculiar rights and privileges from the State and is therefore under no implied obligation to serve the public."

In *Collister* v. *Hayman,* 183 N. Y. 250, the court said: "A theater may be licensed, like a circus; but the license is not a franchise, and does not place the proprietors under any duty to the public or under any obligation to keep the theater open. * * * The defendants were conducting a private business, which, even if clothed with a public interest, was without a franchise to accommodate the public, and they had the right to control it the same as the proprietor of any other business, subject to such obligations as were placed upon them by the statute hereinafter mentioned. Unlike a carrier of passengers, for instance, with a franchise from the State, and hence under obligation to transport any one who applies and to continue the business year

in and year out, the proprietors of a theater can open and close their place at will and no one can make lawful complaint. They can charge what they choose for admission to their theater. They can limit the number admitted. They can refuse to sell tickets and collect the price of admission at the door. They can preserve order and enforce quiet while the performance is going on. They can make it a part of the contract and a condition of admission, by giving due notice and printing the condition in the ticket, that no one shall be admitted under twenty-one years of age, or that men only or women only shall be admitted, or that a woman cannot enter unless she is accompanied by a male escort, and the like. The proprietors, in the control of their business, may regulate the terms of admission in any reasonable way. If those terms are not satisfactory, no one is obliged to buy a ticket or make the contract."

The defendant in error refers to the case of *Greenberg v. Western Turf Ass.* 140 Cal. 360, and the same case on a subsequent appeal, (*Western Turf Ass.* v. *Greenberg,* 148 Cal. 126; 204 U. S. 359;) as supporting the proposition of the right of the legislature to enact a statute of the kind in question. The statute of California provided that it should be unlawful for the proprietor of a place of amusement to refuse admittance to any person over the age of twenty-one years presenting a ticket of admission acquired by purchase, provided that any person under the influence of liquor, guilty of boisterous conduct or of lewd or immoral character might be excluded. The Supreme Court of California upheld the constitutionality of the act as a valid exercise of the police power to regulate places of amusement. The Supreme Court of the United States affirmed the judgment, saying in the course of the opinion: "It is only a regulation compelling it to perform its own contract, as evidenced by tickets of admission issued and sold to parties wishing to attend its race-course. Such a regulation, in itself just, is likewise promotice of peace

and good order among those who attend places of public entertainment or amusement. It is neither an arbitrary exertion of the State's inherent or governmental power nor a violation of any right secured by the constitution of the United States. The race-course in question being held out as a place of public entertainment and amusement, is by the act of the defendant so far affected with a public interest that the State may, in the interest of good order and fair dealing, require defendant to perform its engagement to the public and recognize its own tickets of admission in the hands of persons entitled to claim the benefits of the statute."

The Supreme Court of California, in *Ex parte Quarg*, 149 Cal. 79, refused to carry the doctrine to the extent sought for it in this case, and expressly held unconstitutional and void a statute making it a misdemeanor to sell or offer for sale a theater ticket at a price in excess of that charged originally by the management. The court said: "The police power is broad in its scope, but it is subject to the just limitation that it extends only to such measures as are reasonable in their application and which tend in some appreciable degree to promote, protect or preserve the public health, morals or safety or the general welfare. The prohibition of an act which the court can clearly see has no tendency to affect, injure or endanger the public in any of these particulars, and which is entirely innocent in character, is an act beyond the pale of this limitation, and it is therefore not a legitimate exercise of police power. The sale of a theater ticket at an advance upon the original purchase price, or the business of re-selling such tickets at a profit, is no more immoral or injurious to public welfare or convenience than is the sale of any ordinary article of merchandise at a profit."

There can be no doubt of the right of the legislature to require theaters to take out a license and to regulate their management so far as the public welfare requires. "Natu-

ral persons were born with the right to peddle,. auction, follow the business of brokers, hawking, merchants, commission men, showmen, jugglers, inn-keepers, grocery keepers, liquor dealers, to establish toll bridges, ferries, etc., and most, if not all, of these occupations have been pursued in all ages, in all countries and in all conditions of men, from the savage to the most civilized; yet all civilized governments have controlled them, and required persons, for the public good, to pay for and procure a license to follow these various avocations. The power has been exercised in this State from its very organization almost, without question. If this power may be successfully challenged, it would seem to be doubtful what power might not be, with equal reason. The legislature may exercise all power not prohibited, and unquestionably all legislative power not limited by the fundamental law." (*Wiggins Ferry Co.* v. *City of East St. Louis, supra.*) The power is, however, limited by the fundamental law. The legislature may not prohibit any one of these avocations at its mere pleasure. It may not arbitrarily impose any vexatious burdens on the pursuit of any of these vocations. Whatever restrictions are required in the interest of public morals, health, security or welfare the legislature may impose, and no other. And the same with the business of conducting a theater. To impose burdensome restrictions, not required for the public welfare, on the right of the manager as to the conduct of his business and the contracts he shall make in carrying it on, is to deprive him of the liberty guaranteed to him by the constitution; to prohibit the broker from selling at a profit the tickets which it is his business to sell, deprives him of his property and his liberty.

The act prohibits a sale of a ticket by the manager of a theater without the requirement on its face that it shall not be re-sold at an advance, it prohibits the sale of a ticket at an advance and it prohibits the keeping of a place for such sale. If the manager finds it profitable to have tickets on

sale at different places, he may not sell at the regular price to brokers who maintain offices at such places and get their expenses and profits out of the advance in price on their re-sale of the tickets. The broker's business is prohibited because it has been made unlawful to make a profit. The public is no better nor worse off in health, morals, security or welfare. These are arbitrary and unreasonable interferences with the rights of the individuals concerned. The business of the broker in theater tickets is no more immoral or injurious to the public welfare than that of the broker in grain or provisions. If he does not make the price satisfactory to intending purchasers they are under no compulsion to buy. They have no right to buy at any price except that fixed by the holder of the ticket. The manager may fix the price arbitrarily and may raise or lower it at his will. Having advertised a performance he is not bound to give it, and having advertised a price he is not bound to sell tickets at that price. It is immaterial to determine whether a theater ticket is either transferable or revocable. The fact is, that the bearer of the ticket is admitted to the performance. The business of dealing in theater tickets is carried on to some extent at least, and the right to do so and to contract in regard to such tickets is a right in which those who use it are entitled to be protected. Nor is the Civil Rights act material, for there arises no question of the denial of equal rights. Though the manager sells all his tickets at one price it may be a valuable right to sell to the broker.

It was held in the case of *Burdick* v. *People,* 149 Ill. 600, that a statute making it unlawful for any person not duly authorized by a railroad company to sell a ticket was a valid enactment. But a railroad company has a franchise from the State, and the manner in which its business as a carrier shall be conducted is clearly under the control of the legislature. The proprietor of a theater stands on an entirely different footing.

The act in question cannot be justified as a police regulation and was not within the power of the legislature to enact. The judgments of the municipal court are therefore reversed.

*Judgments reversed.*