THE CITY OF CHICAGO, Plaintiff in Error, *vs.* DAVID B. WEBER *et al.* Defendants in Error.

*Opinion filed October 28, 1910.*

1. MUNICIPAL CORPORATIONS—*source of a city's power to pass ordinances.* The power of a city to pass an ordinance must be found in its charter in express terms or it must be necessary in order to carry out the powers expressly granted, or be essential, and not simply convenient, to the declared objects and purposes of the corporation.

2. SAME—*power to require theater owners to employ firemen is not expressly given nor essential.* The power of a city to compel theater owners to employ and pay a city fireman to be present at each performance is not expressly given nor is it essential to the declared objects and purposes of the municipal corporation.

3. SAME—*scope of a city's power to regulate places of amusement.* The power of a city to regulate theaters and places of amusement extends to methods of construction, regulating the seating of the building and similar details with respect to the building; but does not include the power to require the attendance of a fireman at a place of amusement, which is a matter relating not to the place but to the public attending the place.

4. SAME—*power to license theaters has no application to requiring attendance of firemen.* The power of a city to license, tax, regulate, suppress and prohibit theatricals and other exhibitions, shows and amusements, has no application to the matter of requiring theater owners to employ and pay a member of the city fire department to be in attendance at each performance..

5. SAME—*power respecting nuisances does not authorize ordinance concerning firemen at theaters.* The power of a city to determine what shall be a nuisance and abate the same does not include the power to compel theater owners to employ and pay a city fireman to attend upon each performance, as a theater is not a nuisance *per se* and cannot be made a nuisance by a declaration of the city unless it is a nuisance in fact.

6. SAME—*ordinance compelling theater owners to employ and pay city firemen is not included in police power.* The fact that an ordinance requiring the attendance of a city fireman at theaters is a provision for the safety of the public and is embraced within the city's power to regulate the police and pass and enforce all necessary police ordinances does not determine the question of the city's right to compel the owners of the theaters to pay for the services of such fireman.

7. SAME—*a city has no power to require theater owners to employ and pay city firemen.* A city has no power, express or implied, to require persons conducting theaters to employ and pay firemen, to be detailed by the fire marshal of the city from the regular city fire department, to attend each performance and perform duties in furtherance of the public safety. (*City of Chicago v. Chicago Union Traction Co.* 199 Ill. 259, distinguished.)

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding.

EDWARD J. BRUNDAGE, Corporation Counsel, CHARLES M. HAFT, and ROBERT L. CAMPBELL, for plaintiff in error.

GEORGE A. TRUDE, WILLIAM H. SEXTON, and LEON HORNSTEIN, (TOLMAN, REDFIELD & SEXTON, of counsel,) for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

David B. Weber and Max Weber, the defendants in error, are owners of the Alhambra and Columbia theaters, in the city of Chicago. An ordinance was passed and approved requiring all persons conducting theaters to employ firemen to be detailed by the fire marshal of the city from

the regular city fire department and to pay for the services rendered. Firemen were detailed and attended at said theaters in pursuance of the ordinance, and the city of Chicago, plaintiff in error, brought suit in the municipal court of Chicago against defendants in error for $50 a month for the services of the fireman at the Alhambra theater and $45 a month for the services of the fireman at the Columbia theater for a period of several months. The cause was tried by the court and propositions of law submitted by the plaintiff were held to be the law, to the effect that a place like a theater is subject to municipal regulation for the preservation of the public safety; that the ordinance was not void as special legislation because it did not apply to all persons conducting places where the public are invited to congregate in numbers; that a classification is valid if based upon a rational difference of situation or condition, and that the ordinance operated alike upon every person in the city brought within the conditions and circumstances prescribed by it. The court, however, held propositions of law submitted by the defendants that the requirement of the ordinance was illegal and void and contrary to sections 2 and 13 of article 2 of the constitution of this State and section 1 of the fourteenth amendment to the constitution of the United States. The court found for the defendants and entered judgment accordingly, and the writ of error in this case was sued out to review that judgment.

The ordinance in question classifies buildings into eight classes, and contains numerous requirements for the prevention and extinguishment of fires, in the construction of buildings to be used as theaters and their equipment, and for the safety of those who may be in a theater in case of fire. It requires every person conducting a theater to employ an experienced and competent person as a private watchman and fireman, who shall be approved by the fire marshal, be subject to his orders, be in distinctive uniform and be on duty during the entire time the theater is open

to the public. The private watchman or fireman is to see that the provisions of the ordinance are complied with, that exit doors are unlocked and the apparatus and appliances in efficient and working order. The ordinance also provides for supervision of the construction and inspection of the building for the purpose of seeing that the requirements of the ordinance are obeyed. Section 349 provides that it shall be the duty of every person, firm or corporation conducting, operating and maintaining a theater to procure at his, their or its own expense the attendance, at each and every performance, of one fireman, who shall be detailed by the fire marshal from the regular city fire department and shall be in the uniform of the fire department. He is to report to and be subject to the orders of the fire marshal, and must see that the fire apparatus is in proper condition, the exit doors unlocked and all the appliances in efficient and ready working order. Compensation is to be paid to the city for the city fireman and is to be used for the use and benefit of the fire department. The firemen detailed at the different theaters were instructed to perform the duties prescribed by the ordinance, and in case of fire to turn in an alarm and extinguish the fire as soon as possible. If the fire did not amount to much they were to walk out on the stage and tell the people that there was no danger, not to be excited and to keep their seats.

In determining the question whether the city had power to compel the defendants to pay for the services of city firemen in attendance upon their theaters in the discharge of their duties as members of the fire department, the recognized rule is that a municipal corporation possesses and can exercise the following powers and no others: "First, those granted in express words; second, those necessary or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. Any fair, reasonable doubt concerning the ex-

istence of the power is resolved by the courts against the corporation and the power is denied." (*City of Chicago* v. *Blair,* 149 Ill. 310; *Wilkie* v. *City of Chicago,* 188 id. 444.) The power to impose this burden upon the owners of theaters must therefore be found in the charter of the city in express terms, or it must be necessary to carry out the powers expressly granted or be essential to the declared objects and purposes of the corporation.

Counsel for the city, to sustain their claim of authority, refer to the clauses of section 63 of article 5 of the city charter, giving authority to license, tax, suppress or prohibit theaters and other exhibitions, shows and amusements; to regulate places of amusement; to regulate the police of the city and pass and enforce all necessary police ordinances, and to determine what shall be a nuisance and to abate the same. There would be no warrant for saying that the requirement is the exercise of an inherent power which is indispensable to the declared objects and purposes of the corporation, and the power is not granted in express words. The authority to license, tax, regulate, suppress and prohibit theatricals and other exhibitions, shows and amusements, by which the city council may exercise a discretion as to the amount of a license fee or tax or prevent shows detrimental to the public, has no application. The authority to regulate a place of amusement confers power to provide for methods of construction, regulation of the seating and every detail with respect to a building as a place of amusement, but power to regulate the place does not include the power to require the attendance of a fireman for the purpose of extinguishing fires and aiding the audience in their exit, which relates not to the place but to the public attending the theater. A city may declare and abate nuisances, but a theater is not a nuisance *per se,* and a declaration by the city would not make it a nuisance unless it was such in fact. (*Village of DesPlaines* v. *Poyer,* 123 Ill. 348.) It is clear that the requirement in question

is not derived from the power to declare and abate nuisances. If the power is conferred by the city charter it is included within the authority to regulate the police of the city and to pass and enforce all necessary police ordinances.

It is undoubtedly true that provisions for the safety of the public come within the police power, as has been frequently held with reference to crossings over railways, (*Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309,) and the safety of the public attending theaters in large numbers would be promoted by the attendance of a member of the fire department and the performance of the duties imposed upon him by the ordinance. That, however, does not determine the question of the right to require a theater owner to pay for such services rendered to the public. Counsel for the city regard the question as merely one of classification as between owners of theaters and owners of other buildings, and insist that there are material differences between theaters and other buildings where there are large numbers of people, so that the classification is founded on substantial differences. That is not the whole question. The legislature have the same authority over the business of conducting the theater as any other lawful business and no more, (*People* v. *Steele,* 231 Ill. 340,) and if the city cannot impose a burden like the one in question upon private owners it is immaterial whether it can classify owners or not. There are differences between theaters and some other places where there are large numbers of people exposed to the dangers of fire, consisting in the fact of their being seated and the liability to a panic with the dangerous consequences, but whether there is any perceptible difference between theaters, assembly halls and churches where practically equal numbers gather and are seated is not so clear. It was proved that there are lodge halls, drill halls, churches, and halls devoted to vocal and instrumental concerts, where great numbers of people attend and are seated in substantially the same manner as

in theaters.    There are church buildings, not fire-proof, where services are held in upper floors, and one where the church is located on the third or fourth floor of a business block, with access by wooden stairways.    There are other buildings in the city where there are great numbers of people which are distinguished in some respects from theaters. There are department stores in which the number of clerks and employees range from 2000 to 4000 in dull seasons and reach 6000 in busy times and in which there are from 5000 to 10,000 people at one time.    These buildings are filled with inflammable material and without the exits required in theaters.    It is true that section 22 of article 4 of the constitution does not apply to municipal ordinances, (*People* v. *Cooper,* 83 Ill. 585; *Block* v. *City of Chicago,* 239 id. 251;) but other provisions of the constitution to protect the citizen from the imposition of unlawful burdens do apply.    (*City of Chicago* v. *Netcher,* 183 Ill. 104.)    The illustration given with respect to other buildings is not for the purpose of demonstrating that there is no ground for classification as between theaters and other buildings, but for the purpose of making it clear that there are other buildings and property owners which might be subjected to the same requirement if the power exists.    In every building in the city where large numbers of people are employed or where the public go in crowds, the safety of those in the building would be promoted by having a member of the fire department there, and if the cost of discharging the duty to the public who attend theaters may be charged to the owner, the same requirement may be made of the owner of every other building where the public are invited or attend in numbers.    The city has power to establish a fire department, to erect engine houses and provide fire engines and other implements for the prevention and extinguishment of fires, but that duty is a duty to the public.    If there is power to charge the expenses of performing that public duty to the owner of a theater there is also power to do the same

thing with respect to other owners, and the members of the fire department could be parceled out and stationed in private buildings, so that practically the whole expense of the fire department would be paid by individuals or corporations. If the city has authority to do that it could accomplish the same result with policemen, who are in the direct exercise of the police power, and they might be stationed in every building where disorder or violation of the law might occur and the expense be charged to the owner. That the city cannot perform its duties to the public in that way is manifest. The principle involved is not different from the one laid down in *Gridley* v. *City of Bloomington,* 88 Ill. 554, and *City of Chicago* v. *O'Brien,* 111 id. 532, where it was held that the public burden of keeping sidewalks free from obstructions by snow could not be laid upon a private individual who owned the adjoining property, and *Village of Lemont* v. *Jenks,* 197 Ill. 363, where it was attempted by ordinance to impose a charge upon the improved lots as compensation for the benefit derived from increased protection against fire.

Counsel for the city rely upon the decision in *City of Chicago* v. *Chicago Union Traction Co.* 199 Ill. 259. But that case rests upon a different ground. The company occupied a portion of the street and was transacting its business for its own gain on the street. The court said that the city could not, by virtue of the police power, require the company to clean and repair the street if the real purpose was merely to shift the public burden from itself to the company, but the company had a special privilege to occupy the street and carry on its business therein and a prior right of passage upon its tracks and the tracks interfered with the work of cleaning the street, so that as much time was required to clean the street outside of the tracks as would have been required to clean the entire surface of the street if the tracks were not there. The regulation merely required the company to so manage and care for

the portion of the street occupied by it that the public would not be put to additional expense by such occupation and use.

The charge is not an inspection fee, which may be lawfully imposed upon the principle that it is compensation for services rendered beneficial to the person who is required to pay it, (*Chicago, Wilmington and Vermilion Coal Co..* v. *People,* 181 Ill. 270,) and counsel do not contend that it can be sustained as an inspection fee.

The learned counsel who have argued the cause have been able to find only two cases where similar questions to those in this case were involved. One case is *Waters* v. *Leech,* 3 Ark. 110, where a provision that a city constable should be stationed at a theater at the expense of an owner was held to be void and the court took the same view of the question as we do. The other case is *Tannenbaum* v. *Rehm,* 11 L. R. A. (N. S.) 700, in which the Supreme Court of Alabama sustained an ordinance like this one. That court stated a well known rule that police ordinances simply regulate the use and enjoyment of private property, and in the theory of the law the owner is compensated for the burden by sharing in the general benefits which the regulations are intended and calculated to secure. The court regarded the ordinance as within the police power and not unreasonable. We have sufficiently stated our reasons for reaching a different conclusion.

We conclude that the legislature have not empowered the city to pass an ordinance of the character of this one, and it is therefore unnecessary to consider the question whether the legislature might authorize the passage of such an ordinance, or whether an ordinance of this character, duly authorized, would violate any constitutional provision.

The judgment is affirmed.        *Judgment affirmed.*