**INFORMATION TECHNOLOGIES, INC., Appellant,**

v.

**ST. LOUIS COUNTY and Regional Justice Information Service, Respondents.**

**No. ED 76596.**

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 21, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 2000.

Application for Transfer Denied April 25, 2000.

---

1. City's motion to strike a portion of Southwestern Bell's reply brief is denied.

Ann E. Buckley, William M. Corrigan, Jr., Daniel C. Nelson, St. Louis, for appellant.

Michael A. Shuman, Clayton, Mark E. Lawson, St. Louis, for respondent.

ROBERT G. DOWD, Jr., Judge.

Information Technologies, Inc. (ITI) appeals from a trial court judgment finding the contract St. Louis County (County) entered into with Regional Justice Information Service (REJIS) did not violate Sections 50.660 and 34.073, RSMo 1994,[1] or Section 2.180 of the St. Louis County Charter. On appeal, ITI claims the trial

---

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

court erred when it (1) erroneously declared and applied Section 50.660, (2) erroneously declared and applied Section 34.073, and (3) erroneously declared and applied Section 2.180 of the St. Louis County Charter. We reverse.

Sometime between 1996 and 1998, the County recognized that its Computer Aided Dispatch (CAD) system was not Y2K compliant. A CAD system allows the information taken on 911 calls to be transferred to the appropriate emergency unit. In July 1998, the County Police Department decided it wanted the Logistic Systems, Inc. (LOGISYS) system that was available through REJIS. The County did not advertise for competitive bids on the new system.

ITI, which had demonstrated a prototype of its CAD system designed specifically for the County, had expected to submit a bid to the County to provide a new CAD system. On November 6, 1998, the St. Louis County Council enacted ordinance 19179 which authorized the St. Louis County Executive to enter into a contract with REJIS for the CAD system without taking competitive bids. The County contracted with REJIS to lease the LOGISYS CAD system for a total price of $1,686,208.04.

ITI filed an action for injunction, declaratory judgment, or other relief. The preliminary injunction and declaratory actions were consolidated for trial. The trial court in its Judgment, Order, and Decree found that the County acted within its authority when it entered the contract with REJIS. This appeal follows.

We will address ITI's first and third points together. In ITI's first point, ITI argues the trial court erroneously declared and applied the law when it found the County had not violated Section 50.660, which requires competitive bids on contracts of $3,000 or more. We agree. ITI argues in its third point that the trial court erroneously declared and applied Section 2.180 of the St. Louis County Charter which provided for the ordinance that au-

thorized the County/REJIS contract. We agree.

■ The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The sole legal question presented is whether competitive bids are required in this situation under Missouri statutes Section 50.660 and Section 34.073, and Section 2.180 of the St. Louis County Charter. If the only issue is whether the facts of a particular case fall within the meaning of a statute, that issue is a question of law. *Laclede Gas Co. v. Labor and Indus. Relations Com. of Mo.,* 657 S.W.2d 644, 649 (Mo.App. E.D.1983). Where the trial court rules on a question of law, it is not a matter of discretion. *State v. Plastec, Inc.,* 980 S.W.2d 152, 154 (Mo.App. E.D.1998). The judgment of the trial court is afforded no deference when the law has been erroneously declared or applied. *Id.* at 154–55.

■ "Often there is a conflict existing between the provisions of a charter (municipal or county) and the general law." *State ex rel. St. Louis County v. Campbell,* 498 S.W.2d 833, 836 (Mo.App.1973). "When a conflict occurs, the resolution thereof, as a general principle, depends on whether the functions are 'private, local corporate functions' or 'governmental.'" *Id.* (citing *Grant v. Kansas City,* 431 S.W.2d 89, 92 (Mo. banc 1968)). If the municipality's act is a private, local corporate function then local law applies. *Kansas City v. J.I. Case Threshing Mach. Co.,* 337 Mo. 913, 87 S.W.2d 195, 202 (1935). If the municipality's act is a governmental function then state law applies. *Id.*

Section 50.660 states:

...All contracts and purchases shall be let to the lowest and best bidder after due opportunity for competition, including advertising the proposed letting in a newspaper in the county or township

with a circulation of at least five hundred copies per issue, if there is one, except that the advertising is not required in case of contracts or purchases involving an expenditure of less than three thousand dollars.[2]

The St. Louis County Charter Section 2.180 states:

Pursuant to and in conformity with the constitution of Missouri and without limiting the generality of the powers vested in the council by this charter, the council shall have, by ordinance, the power to: ...30. Establish uniform procedures governing purchases of and contracts for property and services all of which shall be based upon competitive bids except in those instances authorized by ordinance....

The County Council later enacted an ordinance allowing the contract for the CAD system to go to REJIS. Ordinance 19179 passed by the County Council states:

Section 1. The County Executive on behalf of St. Louis County, Missouri, is authorized to enter into a contract with Regional Justice Information Service ("REJIS") for acquisition of computer hardware and software to be supplied to St. Louis County in connection with enhancements to the St. Louis County Police Computer Aided Dispatch (CAD) System and Records Management System (CARE).

Section 2. The contract authorized in Section 1 shall provide for lease of the hardware and software to St. Louis County for a term of five years with a renewal term of not less than twenty-four months nor longer than five years; for payment to REJIS in an amount not to exceed One Million Eight Hundred

Thousand Dollars ($1,800,000.00); for reversion of the hardware and software to St. Louis County in the event of termination and non-renewal of the contract; and for such other terms and conditions as are approved by the County Counselor.

The question before us is whether the acquisition of a CAD system by the County is a corporate or governmental function. If the acquisition of the CAD system is a governmental function then Missouri statutes will supply the applicable law and competitive bids are necessary because the purchase price is $3,000 or more.[3] If the acquisition of the CAD system is a private, local corporate function, then the county charter will supply the applicable law.

The County is a county of the first class of the State of Missouri, operating under a home rule charter form of government adopted by the people April 2, 1968, pursuant to the provisions of the Missouri Constitution Article VI, Section 18. "We recognize that Article VI, Section 18(b) of the Constitution, 'in authorizing the adoption of home rule charters, ... carries with it an implied grant of such powers as are reasonably necessary to the exercise of the powers granted ....'" *Flower Valley Shopping Center, Inc. v. St. Louis County,* 528 S.W.2d 749, 754 (Mo.1975). "But, a charter or ordinance enacted under Section 18(b), may not 'invade the province of general legislation' involving the public policy of the state as a whole." *Id.* "...[T]he true meaning and intent of the constitutional provision for framing homerule charters was that, as to corporate functions, the city should have a free hand in framing its charter, but that as to governmental functions, which through permission or delega-

---

2. There are some exceptions to this statute. For example, if the CAD system from REJIS were a unique system, then the County could purchase the system without taking competitive bids. The County does not argue, however, that the CAD system is a unique product.

3. REJIS's argument that Section 50.660 does not apply to service contracts is without merit. The plain language of the statute requires that *"All contracts* and purchases shall be let to the lowest and best bidder after due opportunity for competition ...." The arrangement between the County and REJIS was clearly a contract for more than $3,000.

tion of the state, the city exercised, the state necessarily retained control." *J.I. Threshing Mach. Co.*, 87 S.W.2d at 202.

█ We find general law describing governmental and local functions, but find no case law as to what kind of a function acquiring a CAD system is. "A use is governmental if created pursuant to a duty imposed on a state to provide for the general welfare of its citizens." *City of Vinita Park By and Through Bd. of Directors v. Girls Sheltercare, Inc.*, 664 S.W.2d 256, 262 (Mo.App. E.D.1984). However, certain functions have, by this court, been determined governmental, the control of which remains in the state. *J.I. Threshing Mach. Co.*, 87 S.W.2d at 202. "The police power is one. A municipal corporation has no inherent police power, but derives it solely from delegation by the state." *Id.* "Some of the other matters, which are purely governmental functions, are those pertaining to suffrage and elections, education, regulation of public utilities, and administration of justice." *Id.* at 202–03. "There can be no doubt that the power to tax falls within this class. It is a governmental function inherent in the state." *Id.* at 203. "…[B]ringing additional territory into cities without the consent of the inhabitants and owners of property therein is an important governmental function in which the whole state has an interest." *Hudson Community Ass'n v. City of Ferguson*, 456 S.W.2d 581, 585 (Mo.App.1970).

Because "…a charter or ordinance enacted under Section 18(b), may not 'invade the province of the general legislation' involving the public policy of the state as a whole," the public policy of Missouri regarding competitive bidding must be discussed. The state of Missouri also supports the public policy behind the practice of obtaining competitive bids. This court stated in *O.J. Photo Supply,Inc. v. McNary*, 611 S.W.2d 246, 248 (Mo.App. E.D.1980):

> It is generally held that the purposes of such legislative requirements 'are for the purpose of inviting competition, to

guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit of enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest.

*Id.* Missouri has a state interest in controlling by statute the making of contracts by the officers of municipal corporations. These laws are for the protection of Missouri's citizens who support public agencies through the payment of taxes. A sound public policy supports the proposition that reasonable notice shall be given of the letting of public contracts in order that by competition in bidding the public may receive the benefit of the greatest possible value for the least expenditure.

In resolving the issues in this case, we find *City of Hamilton v. Public Water Supply Dist. No. 2 of Caldwell County*, 849 S.W.2d 96 (Mo.App. W.D.1993) instructive. This was a negligence case, but we find the analysis of governmental and corporate functions helpful. *City of Hamilton* involved the interpretation of a long-term contract between a city and a public water supply district of a county. *Id.* at 98. The city sold water to the public water supply district and the water was then sold to its customers. *Id.* A state statute required that when bonds were used to pay for "…all or part of the cost of purchasing, construction, extending or improving … revenue producing water … the cost of operation and maintenance and the principal interest of the bonds to be paid solely from the revenues derived by the municipality." *Id.* (quoting Section 250.120.1, RSMo 1986). The city wanted to raise the price of the water pursuant to the statute and the district sued under the contract. *Id.* at 99. The court found that because the district operated for profit it

was a private corporate function. *Id.* at 103. The court in making this conclusion relied on *Lober v. Kansas City,* 74 S.W.2d 815 (Mo.1934). " 'Where the water system of a municipal corporation is conducted by the municipality in part for profit, even if principally used for public purposes, the municipality acts in its corporate or private capacity,' and not in the exercise of the police power." *Id.* at 103 (quoting *Lober,* 74 S.W.2d at 819). *Lober* quotes at length McQuillin's 6 *Municipal Corporations* (2d Ed.) Sec. 2852. *Lober* 74 S.W.2d at 819. *Municipal Corporations* states: "Where the water system of a municipal corporation is conducted by the municipality for a profit, even if principally used for public purposes, ... the municipality acts in its corporate capacity ...." 6 *Municipal Corporations,* at Sec. 2852.

 The County argues the acquisition of the CAD system is not a governmental function because it is only the procurement of items for the County. The County in oral arguments conceded that the *use* of the CAD system was a governmental function. The *City of Hamilton* states, "The *acquisition* or construction by a city of a waterworks is an exercise of public purpose." *City of Hamilton,* 849 S.W.2d at 102 (emphasis added). Thus the acquisition of facilities to provide a governmental function is itself a governmental function.

Based on this reasoning and logic, we find that the acquisition of a CAD system is a governmental function. The CAD system was acquired by the County for a public purpose—namely the safety and protection of its citizens. A CAD system is for the general welfare of the citizens in that it enables them to receive aid in an emergency. It is a public service. We note that not everything a local government does is a governmental function in which state law should be followed. As *City of Hamilton* illustrates, a city's operation of a waterworks for profit is a corporate function. In our case, it is not a corporate function because it is not done

for profit. Nor is it the kind of activity that a corporation would do. Because we find that it is a governmental function, we find that state statutes provide the applicable law. Because the contract price was over $3,000 or more, the County should have followed the competitive bidding procedure detailed in Section 50.660. Because the County did not use competitive bidding to assign the contract, we find the contract invalid.

We note that by requiring competitive bids we are not requiring that the lowest bid must be accepted. The statute requires that the contract should go to the lowest and *best* bidder. Section 50.660. ITI concedes that REJIS may again get the contract after competitive bids are taken. However, it is in the best interest of taxpayers and bidders that bids be taken on a competitive basis. Point one granted.

As discussed, the acquisition of a CAD system is a governmental function. The County Charter may not displace state law with respect to governmental functions. The County Council was without authority to enact the ordinance bypassing competitive bidding and allowing the contract with REJIS. State law should have been followed. Point three granted.

 ITI argues in its second point that the trial court erroneously declared and applied Section 34.073, which requires preference to Missouri firms, corporations and individuals. Section 34.073.1 states:

In letting contracts for the performance of any job or service, all agencies, departments, institutions, and other entities of this state and of each political subdivision of this state shall give preference to all firms, corporations, or individuals doing business as Missouri firms, corporations, or individuals, or which maintain Missouri offices or places of business, when the quality of performance promised is equal or better and the price quoted is the same or less.

Appellant argues that REJIS, a Missouri firm, is merely a conduit that leased

the LOGISYS system, from a Montana company, then in turn leased the system to the County in violation of the express purpose of the statute. We disagree. Appellant focuses on the source of the product, but the statute only dictates that preference be given to Missouri firms in letting contracts. Where the language of the statute is unambiguous, there is no room for construction of the statute, and we must give effect to the plain meaning of the statute as it is written. *Manes v. Depew*, 987 S.W.2d 527, 529 (Mo.App. E.D. 1999). The trial court found and we agree that REJIS is a Missouri body, both corporate and political, with its principal place of business in St. Louis City, Missouri. County entered into a contract with REJIS, which is a Missouri firm under the definition in Section 34.073. We decline to look beyond the contract to the source of the product as this would lead to impractical results. We can envision instances where contracts entered into for the acquisition of products or services from a Missouri firm where the products or services themselves may not necessarily have originated in Missouri. We look only to the contract to ensure the party to the contract is a Missouri firm. Further review of the statute's language and its clarification is a task for our state legislature if it sees fit, but the plain language of the statute here was followed. Point two is denied.

Judgment reversed.

CRANE, P.J., and SULLIVAN, J., concur.