### JG ST. LOUIS WEST LIMITED LIABILITY COMPANY, et al., Appellants,

v.

### CITY OF DES PERES and West County Center, LLC, Respondents.

### No. ED 77037.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 2, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 22, 2001.

Application to Transfer Denied April 24, 2001.

Charles S. Elbert, John Gianoulakis, Robert F. Murray, St. Louis, MO, for appellant.

Mark G. Arnold, Joseph P. Conran, St. Louis, MO, for intervenor.

Kevin M. O'Keefe, St. Louis, MO, for respondent.

MARY RHODES RUSSELL, Judge.

JG St. Louis West Limited Liability Company, owner of Chesterfield Mall, and taxpayers from Des Peres and Kirkwood (collectively "Plaintiffs") appeal from a judgment in the Circuit Court of St. Louis County in favor of Des Peres ("City") and West County Center, LLC ("shopping mall"). Plaintiffs challenge the trial court's findings that ordinances passed by City, calling for the use of tax increment financing ("TIF") to redevelop shopping mall, were duly enacted and not arbitrary. We affirm the judgment in that City's approval of the TIF project was not arbitrary, was fairly debatable, and was supported by substantial evidence.

In 1994, the Nordstrom department store ("Nordstrom") sought to locate in the St. Louis area. In order to attract Nordstrom, shopping mall asked City to consider redeveloping the mall through the use of TIF. City agreed to aid in the redevel-opment of shopping mall and established a TIF commission ("Commission").

Commission held meetings in 1995 and early 1996 in preparation of proceeding with TIF if shopping mall was to receive approval from Nordstrom. City hired planning consultants to do a preliminary analysis of shopping mall, and they concluded that the area was blighted and met the "but-for" test contained in the TIF statute.

For a year and a half, while negotiations continued between Nordstrom and shopping mall, Commission ceased meeting. In 1997, shopping mall announced that it would be expanding from a two-anchor mall to a four-anchor mall, with the addition of Nordstrom and Lord and Taylor department stores.

With this announcement, Commission resumed meeting, and City issued a request for redevelopment proposals to be submitted by private entities detailing the redevelopment to take place at shopping mall. Shopping mall submitted the only proposal, projecting redevelopment costs to total $212,171,501 and requesting $50,000,000 in TIF from Commission.

City's urban planning consultants drafted the Redevelopment Plan, which set forth the various statutory requirements and findings. City and shopping mall negotiated over the amount of the TIF and settled on $29,800,000. In November 1997, Commission held the statutorily required public hearing. Another public hearing was held by City's Board of Aldermen ("Board") and Plaintiffs filed objections to the use of TIF at both hearings.

Commission recommended that Board approve this TIF amount and adopt the Redevelopment Plan. Thereafter, Board unanimously passed four ordinances, approving and adopting the Redevelopment Plan, authorizing the issuance of TIF obli-

gations in the amount of $29,800,000, approving a site plan for the redevelopment of shopping mall, and authorizing City to enter into a redevelopment agreement with shopping mall.

Plaintiffs filed suit against City seeking a declaratory judgment that the four TIF ordinances were invalid, as well as seeking an injunction to prohibit the use of TIF in the redevelopment of shopping mall. Plaintiffs asserted the TIF ordinances were invalid because Board acted arbitrarily and unreasonably in declaring shopping mall to be a blighted area, in finding that shopping mall would not reasonably be developed without the use of TIF, and in approving the use of public funds for clearly private purposes. Prior to trial, shopping mall was permitted to intervene as a party defendant.

The trial court denied Plaintiffs' request for declaratory and injunctive relief. Furthermore, the court held that City's four TIF ordinances were duly enacted and the actions of Board were fairly debatable and not arbitrary nor induced by fraud, collusion, or bad faith. Plaintiffs timely filed their notice of appeal.

### I. Blighted area

 Plaintiffs' first point on appeal alleges the trial court erred in holding that Board did not act arbitrarily in finding that shopping mall was a blighted area. In determining whether an area is blighted and in approving the Redevelopment Plan, Board acts in its legislative capacity. *Crestwood Commons Redevelopment Corp. v. 66 Drive–In, Inc.,* 812 S.W.2d 903, 910 (Mo.App.1991). Judicial review of a legislative determination is limited to whether it was arbitrary or induced by fraud, collusion or bad faith or whether Board exceeded its powers. *Id.*

 In reviewing the trial court's decision, we make our own independent determination of whether the legislative body's decision was fairly debatable. *Hoffman v. City of Town and Country,* 831 S.W.2d 223, 225 (Mo.App.1992). If Board's decision is reasonably doubtful or fairly debatable, we will not substitute our opinion for that of Board. *Crestwood Commons Redevelopment Corp.,* 812 S.W.2d at 910. The burden of proof falls on the party challenging Board's determination. *Maryland Plaza Redevelopment Corp. v. Greenberg,* 594 S.W.2d 284, 287 (Mo.App.1979).

Plaintiffs assert three grounds that support their charge that Board's blighting determination was arbitrary.

### A. Economic asset/liability

 First, Plaintiffs argue that both the trial court and Board found shopping mall to be City's single greatest economic asset, which precludes their finding that it is an economic liability in its present condition and use, and thus a "blighted area."

Section 99.805(1) RSMo 1994[1] sets out the statutory definition of "blighted area." This definition provides:

> "Blighted area", an area which, by reason of the predominance of defective or inadequate street layout, insanitary [sic] or unsafe conditions, deterioration of site improvements, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use;

---

**1.** All further statutory references are to RSMo 1994 unless otherwise indicated.

Plaintiffs argue that this property is not an economic liability. Both Board and trial court found that shopping mall was the "economic engine" of City and its single greatest economic asset. Board and trial court, however, also found that the existence of statutory blighting factors jeopardize the viability of shopping mall, thus making it an economic liability to City as it currently exists.

Board found five blighting factors that combine to make shopping mall an economic liability. It was determined that shopping mall suffers from obsolete platting in that its current two-anchor configuration and its limited space for small retail shops inhibits growth and development. Shopping mall also suffers from improper subdivision, and more specifically, it has irregularly platted lots that constrain the ability to expand the size of the mall. Board also found the presence of deteriorated site conditions including deterioration of the roof, utility system and parapet wall, and a lack of adequate storm water control. Board determined that deterioration of shopping mall's water line could potentially endanger mall property if there was a water main break during a fire, which would make it difficult to access a working fire hydrant.

Evidence cited in the Redevelopment Plan indicated that shopping mall was not keeping its value relative to neighboring, similarly situated and similarly used properties. Moreover, the plan contained evidence of a decline in sales at shopping mall with a corresponding drop in sales tax revenue for City. Three witnesses testified that two-anchor dumbbell malls are obsolete and, without redevelopment, shopping mall would accelerate into a downward spiral and eventually would not survive as a regional shopping mall. Finally, testimony was elicited from the city administrator regarding City's concern about the long-term maintenance of shopping mall.

Plaintiffs have not sustained their burden of showing that Board's decision was arbitrary. While we acknowledge Plaintiffs' argument that it is illogical to label as an economic liability, a commercial enterprise that is indisputably City's greatest economic asset, we are mindful of our standard of review. We find that there was evidence before Board that established shopping mall was an economic liability. While we note there was evidence of shopping mall's increased revenue, this merely demonstrates that there were reasonable theories supporting each side's position as to blighting. Thus, Board's decision as to blighting was fairly debatable.

■ Further, the decision of Board was within its powers as granted by section 99.820 and was neither arbitrary nor induced by fraud, collusion, or bad faith. In making its determination, Board consulted a wide variety of independent information sources including field investigations, records from local sources, interviews with local officials, and other independent studies. These sources led Board to conclude that shopping mall, in its present condition, is an economic liability to City in that it offers a limited shopping experience leading to a decline in growth and revenue. We will not substitute our judgment for that of Board if its decision as to blighting is fairly debatable. We find that it is.

### B. Predominance of statutory blighting factors

■ Second, Plaintiffs claim the trial court ignored section 99.805(1), which requires that a predominance of statutory blighting factors cause shopping mall to be an economic liability to City in its present condition and use. In essence, Plaintiffs argue that there is no substantial evidence that the alleged condition of economic lia-

bility is the result of a predominance of the purported blighting factors. We disagree.

Evidence was presented regarding the economic health of the two-anchor single level mall. An expert in economic development and community planning, who has participated in over 30 development projects, testified that shopping mall must expand in order to remain viable, however, the major impediment to redevelopment and growth is the current subdivision and platting of the property. These impediments combined with physical deterioration of the property discourage redevelopment. This same expert testified that shopping mall "has systems that are deteriorating and that will cost significant money to replace or fix in a facility that does not justify that investment because it is not a sustainable competitive center."

Plaintiffs argue that the blighting factors are minimally significant and do not dominate the redevelopment area. Plaintiffs point to testimony from experts that even if the deteriorated conditions were repaired, shopping mall would still be obsolete and even if not repaired, the deteriorated conditions were not noticeable to customers. These arguments are unpersuasive.

Shopping mall is obsolete because of its platting and subdivision. The physical deteriorations were found to exacerbate the problem. Moreover, while the deteriorated conditions may not be noticeable to customers, they are likely noticeable to probable tenants who could choose not to rent space at shopping mall because of its physical status.

Plaintiffs have again failed to meet their burden of proving that Board's decision in approving the use of TIF was arbitrary. We find Board's decision is fairly debatable in that there was substantial evidence of a predominance of blighting factors establishing a causal connection to the classi-

fication of shopping mall as an economic liability.

### C. Refusal of discovery on City's experts

■ Third, Plaintiffs contend that the trial court applied an incorrect standard of review in holding that Board's actions were not arbitrary because Board relied on experts, two of whom Plaintiffs were refused discovery on. Plaintiffs assert the trial court abused its discretion in this refusal.

While the trial court found that the Board relied on the professional advice of urban planners in making its blighting and but-for analysis, it also made separate determinations that Board acted reasonably in its blighting analysis, that it was not influenced by fraud, collusion, or bad faith, and that its actions in enacting the TIF ordinances were fairly debatable.

■ As to the discovery issue, we find the argument meritless. First, no offer of proof was made at trial and, thus, we have no knowledge about what the testimony of City's experts would be. In order to preserve for appeal the issue of exclusion of evidence, offers of proof must be made at trial to show why the evidence is relevant and admissible. *Evans v. Wal–Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App.1998). Second, Plaintiffs have failed to show reversible error in exclusion of the testimony as required by Rule 84.13(b). This rule requires that any alleged error committed by the trial court must materially affect the merits of the action in order for an appellate court to reverse a judgment.

Our standard of review requires us to independently examine whether Board's determination is fairly debatable. *Crestwood Commons Redevelopment Corp.*, 812 S.W.2d at 910. Assuming this evidence

would support Plaintiffs' position against blighting, and assuming it was admitted, there was still substantial contrary evidence from shopping mall supporting Board's decision as being fairly debatable. Point one is denied.

## II. The but-for test

In their second point on appeal, Plaintiffs claim the trial court erred in holding that the but-for test of the TIF statute was satisfied because the evidence shows that redevelopment would occur without adoption of the Redevelopment Plan.

The but-for test, contained in section 99.810, provides in pertinent part:

No redevelopment plan shall be adopted by a municipality without findings that:

(1) The redevelopment area on the whole is a blighted area, a conservation area, or an economic development area, and has not been subject to growth and development through investment by private enterprise and would not reasonably be anticipated to be developed without the adoption of the redevelopment plan;

 Our standard of review for this point is the same as point one. In reviewing Board's decision, we make our own independent determination of whether the legislative body's decision was fairly debatable. *Hoffman,* 831 S.W.2d at 225. We will not substitute our opinion for that of Board if its decision was reasonably doubtful or fairly debatable. *Crestwood Commons Redevelopment Corp.,* 812 S.W.2d at 910. Plaintiffs carry the burden of showing Board's determination was arbitrary or induced by fraud, collusion or bad faith. *Maryland Plaza Redevelopment Corp.,* 594 S.W.2d at 287.

Plaintiffs advance two arguments in support of this point. First, Plaintiffs claim that the potential for any type of development in the area defeats the but-for test. Second, they contend that the evidence does not support a finding of the impossibility of redevelopment without TIF money.

### A. Type of development

 Plaintiffs argue that if any type of development, not just that called for in the Redevelopment Plan, can occur on the property without TIF, then the but-for statutory test is not met. Plaintiffs cite an Illinois case, *Castel Properties, Ltd. v. City of Marion,* 259 Ill.App.3d 432, 197 Ill.Dec. 456, 631 N.E.2d 459 (1994), for the proposition that the proper focus of the Illinois but-for test, similar to the Missouri test, is whether any commercial growth or development will occur without TIF, not whether the property will be developed consistent with the city's comprehensive plan. *Id.* at 466. We find the argument unpersuasive. The Illinois appellate court, in *Castel Properties,* affirmed the trial court's determination that the city therein failed to meet the but-for test and highlighted the extensive evidence that growth and redevelopment were occurring in the area and would likely continue to occur. *Id.* The present case is factually dissimilar in that there was evidence that growth and development were not occurring and were not likely to occur.

Plaintiffs point to testimony from shopping mall's urban planner who testified as to the likeliness of redevelopment in the area without the use of TIF. The planner testified that although it was "possible" that redevelopment could occur without the use of TIF, he could not specifically explain how it would be possible. Plaintiffs presented no concrete evidence that supported redevelopment in the area without TIF. The speculative nature of the testimony cited by Plaintiffs will not circumvent the but-for test.

Moreover, in giving plain meaning to the TIF statute, Board was to consider the "redevelopment area on the whole" in making its blighting and but-for analysis. Thus, Board was to consider the entire redevelopment area in determining whether it would be developed without TIF. Board was not to focus on piecemeal or sporadic redevelopment on only portions of the redevelopment area. As illustrated in the next subpoint, the evidence presented created a debatable issue as to whether TIF was necessary for redevelopment.

### B. Impossibility of redevelopment without TIF

Plaintiffs have the burden of proving Board's determination was arbitrary or induced by fraud, collusion or bad faith. Plaintiffs cite testimony from City's expert who articulated that some lesser level of rehabilitation was possible without the Redevelopment Plan. In addition, Plaintiffs point to data from their experts showing competitive rates of return if the project was implemented without TIF. While we acknowledge the data presented by Plaintiffs, it simply creates a debatable issue between the two sides' experts as to whether redevelopment would occur without TIF.

Substantial evidence was presented to Board showing that redevelopment would not occur without TIF. An independent expert hired by Plaintiffs to review the case for trial testified that the two current anchors would not likely give up their property rights absent implementation of Redevelopment Plan. A planning consultant testified that absent the Redevelopment Plan, no significant redevelopment of this property would occur by private parties. Furthermore, he went on to testify that private developers would not be likely to expend the money necessary to repair shopping mall. Two more urban planning experts testified to the same effect, that shopping mall would not be redeveloped without TIF. The vice president of development for shopping mall testified that TIF was required in order to bring Nordstroms to shopping mall and redevelop the area.

Plaintiffs presented evidence about the rate of return of the property without TIF money. Plaintiffs' expert testified that shopping mall could generate a rate of return that was described as "adequate" by City's urban planning consultant. Another Plaintiffs' expert testified that it was possible for shopping mall to generate an even higher rate of return.

We acknowledge Plaintiffs' argument that the statements made by City's experts were mere conclusions and not supported by substantial evidence. Independently reviewing the record, we find, however, that the experts provided bases for their opinions and that each had experience in the field of urban planning and redevelopment.

After fully and independently considering all of the evidence and being mindful of our standard of review, it is evident that the but-for test was an issue upon which the experts had differing opinions. To the extent this was a debatable issue upon which Board decided the test was satisfied, this court cannot substitute its judgment for that of Board. Plaintiffs have failed to establish that the decision was arbitrary or induced by fraud, collusion or bad faith. Point two is denied.

### III. Privately owned parking garage

Plaintiffs' third point on appeal contends the trial court erred in holding that TIF proceeds may be used for the construction of a privately owned parking structure because the garage does not constitute "redevelopment project costs" as defined in the TIF statute.

■ Our standard of review on this point is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. The sole question to be answered is whether a privately owned parking structure constitutes redevelopment project costs as that term is defined by section 99.805(11). Since we are asked to determine whether the facts of this case fall within the meaning of a statute, this is a question of law. *Information Techs., Inc. v. St. Louis County*, 14 S.W.3d 60, 62 (Mo.App.1999).

Section 99.805(11) provides:

"Redevelopment project costs" include the sum total of all reasonable or necessary costs incurred or estimated to be incurred, and any such costs incidental to a redevelopment plan or redevelopment project, as applicable. Such costs include, but are not limited to, the following:

(a) Costs of studies, surveys, plans, and specifications;

(b) Professional service costs, including, but not limited to, architectural, engineering, legal, marketing, financial, planning or special services;

(c) Property assembly costs, including, but not limited to, acquisition of land and other property, real or personal, or rights or interests therein, demolition of buildings, and the clearing and grading of land;

(d) Costs of rehabilitation, reconstruction, or repair or remodeling of existing buildings and fixtures;

(e) Initial costs for an economic development area;

(f) Costs of construction of public works or improvements;

(g) Financing costs, including, but not limited to, all necessary and incidental expenses related to the issuance of obligations, and which may include payment of interest on any obligations issued hereunder accruing during the estimated period of construction of any redevelopment project for which such obligations are issued and for not more than eighteen months thereafter, and including reasonable reserves related thereto;

(h) All or a portion of a taxing district's capital costs resulting from the redevelopment project necessarily incurred or to be incurred in furtherance of the objectives of the redevelopment plan and project, to the extent the municipality by written agreement accepts and approves such costs;

(i) Relocation costs to the extent that a municipality determines that relocation costs shall be paid or are required to be paid by federal or state law;

(j) Payments in lieu of taxes;

■ While we acknowledge Plaintiffs' contention that the specific examples set out in the statute provide restrictions as to the type of costs that TIF may be applied for, we find the argument unpersuasive. Rules of statutory construction hold that legislative intent is to be determined from the clear language of the statute. *State v. Sweeney*, 701 S.W.2d 420, 423 (Mo. banc 1985). The statute specifically states that the examples are non-exclusive. They are meant to illustrate what type of costs may be defined as reasonable or necessary. The non-exclusive list in 99.805(11) broadens and does not narrow or limit the type of expenses that

can be defined as redevelopment project costs. *Id.*

We find that a parking structure for a regional shopping mall is a reasonable and necessary cost of a redevelopment plan. It is logical that a shopping mall must provide parking for its customers to be a viable enterprise, whether it be by improvements to a surface lot or by building a separate parking structure. Point three is denied.

The judgment is affirmed.

ROBERT G. DOWD, Jr., P.J. and RICHARD B. TEITELMAN, concur.