**GREAT RIVERS HABITAT ALLIANCE, et al., St. Charles County, Appellants–Respondents,**

v.

**CITY OF ST. PETERS, et al., Respondent–Appellant,**

**Office of Attorney General, Respondent.**

Nos. WD 67047, WD 67048, WD 67049.

Missouri Court of Appeals, Western District.

March 4, 2008.

Marc Henry Ellinger, Christopher Owen Bauman, Jefferson City, Robert Blitz, Clayton, Joann Mary Leykam, St. Charles, for Appellant.

Earl Kraus, Office of the Attorney General, Edward Christina Clausen, Jefferson City, David Taylor Hamilton, Matthew Joseph Fairless, St. Charles, Michael T. White, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

This appeal challenges the City's adoption of tax increment financing ("TIF") for a 1,640–acre tract of farmland in the Northeast corner of the City (the "Area"). The circuit court granted summary judgment in favor of the City of St. Peters (the "City") after a declaratory judgment action was filed by the Great Rivers Habitat Alliance, the Adolphus A. Busch Revocable Living Trust, and four individual plaintiffs [1] (collectively, "GRHA") against the City contending that the City's actions were unreasonable, arbitrary and capricious and also raising constitutional challenges, both facial and as applied, to the Real Property Tax Increment Allocation Redevelopment Act (the "TIF Act"). On appeal, GRHA claims that the trial court misapplied the summary judgment standard, the "fairly debatable" test, and the TIF Act. These errors, according to GRHA, resulted in an erroneous determination that the City properly adopted an ordinance declaring the existence of blight within the Area, declaring that development in the Area is not reasonably anticipated to occur without the adoption of TIF, and declaring that the redevelopment plan adopted conformed with the City's existing comprehensive plan. Finally, GRHA claims that these errors, in combination, resulted in an erroneous entry of summary judgment in favor of the City. Finding merit in GRHA's argument on appeal, we reverse the grant of summary judgment and remand to the trial court for further proceedings.

Our remand makes consideration of GRHA's constitutional claims unnecessary. In the event that resolution of those claims ultimately is necessary, jurisdiction will presumably lie in the Missouri Supreme Court. Mo. Const. art. V, sec. 3.

**Factual and Procedural Background**

The primary issues to be decided in this appeal center around ordinance 3156, which was adopted pursuant to the TIF Act by the City's Board of Aldermen in December of 1999. That ordinance approves a redevelopment plan for the Area and recites:

> The Area on the whole is a blighted area and has not been subject to growth and development through investment by private enterprise and would not reasonably be anticipated to be developed without the adoption of tax increment financing.... The Plan and the Projects conform to the Comprehensive Plan for the development of the City as a whole.

GRHA's petition for declaratory judgment asserts that these legislative findings are arbitrary and capricious; that the City's adoption of a subsequent ordinance violated the TIF Act and the public notice provisions of section 79.130; [2] and that the TIF Act itself is constitutionally infirm, both as applied and on its face. Because the suit involves a constitutional challenge to the validity of a state statute, the Attorney General was named as a defendant, and

---

1. The individual plaintiffs are Andrew P. Riney, Dolores J. Wetzel, Randy F. Hudson, and Allen C. Poggemoeller.

2. All statutory references are to RSMo (2000) unless otherwise noted.

the petition was filed in Cole County. St. Charles County (the "County") was granted leave to intervene as an additional plaintiff.

GRHA and the County then filed a joint amended petition, pled in eleven counts, three of which consist of facial challenges to the TIF Act. Those three counts were the subject of cross-motions for judgment on the pleadings between the plaintiffs and the Attorney General. The trial court heard argument on those claims and granted the Attorney General's motion.

Meanwhile, the City filed a motion for summary judgment on the remaining counts. GRHA filed a response to that motion and a reply and sur-reply followed. The trial court ultimately entered summary judgment in favor of the City, which then filed a motion to amend the judgment to include an award of attorneys' fees. GRHA and the County each filed motions for new trial, which the trial court treated as motions to amend the judgment. All three motions were denied.

GRHA and the County filed notices of appeal to the Missouri Supreme Court, asserting that jurisdiction lay with that court based upon the constitutional challenges to the TIF Act. The City filed a cross-appeal, challenging the trial court's denial of attorneys' fees, and subsequently filed a motion to transfer to this court, which the Supreme Court granted. GRHA has not abandoned its constitutional challenges to the TIF Act, and all parties below remain parties on appeal. All plaintiffs below, however, have filed a joint brief before this court and the Attorney General's brief addresses only the facial constitutional challenges to the TIF Act.

**Standard of Review**

■ On appeal from the entry of summary judgment, this court applies the same criteria as that "employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). It is for this reason that appellate review of summary judgments is "essentially *de novo.*" *Id.* To the extent that we are required to review the trial court's interpretation of state statutes, questions of law are presented, which we review *de novo. Ochoa v. Ochoa,* 71 S.W.3d 593, 595 (Mo. banc 2002). However, questions regarding the constitutional validity of such statutes are beyond the jurisdiction of this court. Mo. Const. art. V, sec. 3.

■ The City's cross-appeal involves only the trial court's denial of attorneys' fees. This court reviews a trial court's decision regarding attorneys' fees for abuse of discretion. *Union Ctr. Redevelopment Corp. v. Leslie,* 733 S.W.2d 6, 9 (Mo.App. E.D.1987) (collecting cases).

**Discussion**

**I—Summary Judgment**

GRHA claims, in six separate points on appeal, that the trial court misapplied the summary judgment standard to its claims that the City acted arbitrarily and capriciously in connection with creating the TIF district at issue. The first point asserts that the trial court misapplied the "fairly debatable" test in a way that improperly shifted the burden of proof on summary judgment. This assertion is intermingled and reasserted throughout all of GRHA's points dealing with arbitrary and capricious action. Those points also assert various misapplications of the TIF Act.

To fully address these points, we must begin with an analysis of GRHA's claims in the underlying suit. Setting aside the constitutional aspects of that suit, over which this court lacks jurisdiction and which

need not be reached in order to resolve the present appeal, that suit questions whether various actions of the City complied with the TIF Act or were otherwise arbitrary and capricious. Because questions of statutory application are inextricably intermingled with the trial court's resolution of the City's summary judgment motion, we begin where all questions of statutory application must begin: with the language of the Act itself.

### (a)—The TIF Act

To properly authorize TIF, a municipality is required to make certain legislative findings. Section 99.810. Of particular import in the present case, a TIF district may be created to address the needs of a blighted area.[3] *Id.* The TIF Act defines the term "blighted area" as:

> an area which, by reason of the predominance of defective or inadequate street layout, unsanitary or unsafe conditions, deterioration of site improvements, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare in its present condition and use[.]

Section 99.805(1).

The first half of this definition refers to various factors, which—alone or in combination—may qualify an area as blighted, but only if those factors result in a set of circumstances outlined in the second half of the definition.

Reading the first half of the definition, we learn that the relevant factors are:

(1) defective or inadequate street layout

(2) unsanitary or unsafe conditions,

(3) deterioration of site improvements,

(4) improper subdivision or obsolete platting, or

(5) the existence of conditions which endanger life or property by fire and other causes, or

(6) any combination of such factors ...

*Id.* (numbering added). Given that the first five factors are joined by the conjunction "or," it would seem that the presence of a "predominance of" any of those factors constitutes blight if the resulting circumstances, described in the second half of the definition, are also present. The sixth factor then proceeds to explain that a combination of those factors would be similarly sufficient to constitute blight; at first blush, this seems to create a problem to the extent that a predominance of inadequate street layout would be sufficient, whether or not such streets existed in combination with any of the other factors. If our analysis stopped here, the sixth factor would be mere surplusage.

Fortunately, the phrase "by reason of a predominance of" modifies the entire list of factors, and provides a reasonable reading of the definition that does not suffer this infirmity. We, therefore, read the definition to explain that if any of the first five factors predominate, our analysis of the first half of this definition is complete, and the necessary conditions are met. If, however, various factors are present without "predominating" in the area, the question must be answered whether those factors, when combined, predominate to such an extent that the resulting circumstances, described in the second half of the definition, are present.

---

**3.** The definition of "blight" is different in the eminent domain statute, section 353.020. Therefore the discussion in *Centene Plaza Re-* *development Corp. v. Mint Properties,* 225 S.W.3d 431, 433 (Mo. banc 2007) concerning "blight" is of little direct aid to us.

Turning to the second half of the definition, we learn that a predominance of factors listed in the first half of the definition will result in blight if it:

(1) retards the provision of housing accommodations or

(2) constitutes an economic or social liability or

(3) [constitutes] a menace to the public health, safety, morals, or welfare[.] [4]

*Id.* (numbering added). Like the factors in the first half of the definition, these resulting circumstances are joined by the conjunction "or." Thus, if a predominance of factors listed in the first half of the definition leads to any resulting circumstance listed in the second half of the definition, an area may properly be declared to be a "blighted area." Finally, and of particular importance to the instant case, the entire definition is modified by its final dependent clause: "in its present condition and use." *Id.* In other words, the "area" in question (the proposed TIF district) "in its present condition and use," [5] must meet this definition.

Armed with this understanding of the statute, we can now lay out the structure and meaning of the definition it contains: An area is blighted if the "predominance of" an enumerated factor or factors leads to any of the enumerated resulting circumstances, all of which must be considered in light of the area's "present condition and use."

In the present case, the City specifically relies upon the first and fifth factors, and the second resulting circumstance. Thus, reduced to its essence, the City argues that the redevelopment area, in its present condition, suffers from inadequate street layout and conditions that "endanger life or property by fire and other causes," to an extent that "constitutes an economic or social liability."

In addition to a finding of blight, the TIF Act requires that a municipality must make additional findings before adopting a redevelopment plan under the Act, two of which are relevant here. First, the City must find that the redevelopment area "has not been subject to growth and development through investment by private enterprise and would not reasonably be anticipated to be developed without the adoption of tax increment financing." Section 99.810.1(1). This finding is frequently referred to as the *"but/for" finding*, and this opinion will use that terminology.

Secondly, the City must legislatively find that the redevelopment plan adopted "conforms to the comprehensive plan for the development of the municipality as a whole." Section 99.810.1(2). For ease of discussion, this opinion will refer to this as the finding of *"conformity."* In the instant case, the City has made all three statutorily required findings: blight, but/for, and conformity. On appeal, GRHA maintains that all three of these legislative findings are arbitrary and capricious. This contention is the central dispute in GRHA's underlying suit. That factual dispute must be resolved by way of the *"fairly debatable"* test.

---

4. The second and third resulting circumstances could be further broken down into constituent parts, but doing so would serve no purpose in the present analysis.

5. The TIF Act's definition of blight is not a model of clarity. The pronoun "its" at the end of the definition must refer to one of the 25 preceding nouns in the definition. Having thoroughly examined that definition, we conclude that the only noun to which "its" can be referring is the first noun: "area." That "its" does not refer to any of the 24 intervening nouns may be demonstrated by a process of elimination: each of those nouns can be excluded for reasons of basic logic or grammar.

### (b)—The "Fairly Debatable" Test

▮ It has long been the rule in Missouri that disputes over the propriety of a municipality's legislative findings are to be resolved by application of the "fairly debatable" test. *See City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 8 (Mo.1958). Under that test, we will not substitute our discretion for that of a legislative body, and review of the reasonableness of legislative action "is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one; if there is such, then the discretion of the legislative body is conclusive." *Id.* Our Supreme Court has explained the policy underlying this rule:

> Out of proper respect for the role of co-equal branches of government, this Court has consistently refused to second-guess local government legislative factual determinations that a statutory condition is met unless there is a claim that the city's decision is the product of fraud, coercion, or bad faith, or is arbitrary and without support in reason or law.

*Spradlin v. City of Fulton*, 924 S.W.2d 259, 263 (Mo. banc 1996). The "fairly debatable" test may also be justified as flowing naturally from a well-recognized presumption: because the validity of legislative enactments is presumed, uncertainties about their reasonableness "must be resolved in the government's favor." *Heidrich v. City of Lee's Summit*, 26 S.W.3d 179, 184 (Mo.App. W.D.2000); *See Hoffman v. City of Town & Country*, 831 S.W.2d 223, 225 (Mo.App. E.D.1992) (noting that the "fairly debatable" test operates "[i]n conjunction with and, perhaps, in amplification of" the presumption of legislative validity). In order to overcome this presumption, it must be shown that no such uncertainty exists—that the challenged action is not "reasonably doubtful or even fairly debatable." *City of St. Charles v. DeVault Mgmt.*, 959 S.W.2d 815, 821 (Mo.App. E.D.1997).

Regardless of the underlying rationale, application of the "fairly debatable" test is rather straight-forward in practice: in order to prevail on any claim that legislative action is unreasonable, arbitrary, or capricious, it must be shown that the reasonableness of that action is not even fairly debatable. *Hankinson*, 312 S.W.2d at 8. The assertion of such a claim ultimately leads to one of two factual findings: either the complained of action is *unreasonable* or the reasonableness thereof is *fairly debatable*.[6] *See, e.g., Heidrich*, 26 S.W.3d at 184 (noting that "this court may reverse a legislative action only if arbitrary and unreasonable, meaning that the decision is not fairly debatable") (internal quotation and citation omitted).

When assessing municipal legislative determinations, "[t]he issue of reasonableness or arbitrariness must turn upon the particular facts of each case," *Parking Sys. Inc. v. Kansas City Downtown Redevelopment Corp.*, 518 S.W.2d 11, 16 (Mo.1974), and judicial review of that issue focuses on "whether there is substantial evidence to support the legislative decision." *Centene Plaza Redevelopment Corp. v. Mint Props.*, 225 S.W.3d 431, 433 (Mo. banc

---

6. While it would be theoretically possible to find that the legislative action involved is "reasonable," such a finding would have no more significance than a finding that a criminal defendant is "innocent." When viewed this way, the "fairly debatable" test bears a strong resemblance to a burden of proof. *See, e.g., Home Bldg. Co. v. Kansas City,* 609 S.W.2d 168, 173 (Mo.App. W.D.1980) (noting that a plaintiff was obliged to show that a city's action was not fairly debatable, and referring to that obligation as a "burden of proof").

2007). Thus, the issue to be decided in the instant case is whether substantial evidence exists that would support the City's legislative findings of blight, but/for, and conformity.

The absence of such evidence would suggest that the City's actions were unreasonable, arbitrary, or capricious. *Id.* at 434–35. Conversely, the existence of such evidence would suggest that the City's actions are, at least, fairly debatable. *See JG St. Louis West LLC v. City of Des Peres*, 41 S.W.3d 513, 519 (Mo.App. E.D.2001).

But because the instant appeal arises from the trial court's grant of summary judgment, our present inquiry focuses upon whether the City has established a right to judgment as a matter of law, and if so, whether there remains any genuine dispute as to the existence or absence of substantial evidence to support the City's legislative findings. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

### (c)—Application of the Summary Judgment Standard

In order to establish its initial right to summary judgment, the City must show, on a foundation of undisputed material facts, that it is entitled to judgment as a matter of law. Rule 74.04(c)(1). If successful, the City will have established a prima facie case for its motion, and the burden of going forward with the evidence shifts to GRHA. *ITT Commercial Fin.*, 854 S.W.2d at 381. Missouri rules describe this burden as the burden to set forth "specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). That burden can be satisfied by a showing

"that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin.*, 854 S.W.2d at 381. As a practical matter, a party responding to a motion for summary judgment will generally also attempt to persuade the trial court that the moving party is not entitled to judgment as a matter of law, in which case, the nonmoving party bears no burden, and summary judgment is not appropriate. *See, e.g., State ex rel. Nixon v. McIntyre*, 234 S.W.3d 474, 479 (Mo.App. W.D.2007). Thus, in the instant case, GRHA has responded to the City's motion both by attempting to place material facts in dispute and by denying the materiality of some of the City's undisputed facts.

This court must view the record on appeal "in the light most favorable to the party against whom judgment was entered," and—like the trial court below—we must "accord the non-movant the benefit of all reasonable inferences from the record." *ITT Commercial Fin.*, 854 S.W.2d at 376.[7] The City has not directed us to any case affirming a grant of summary judgment where the issue of "fairly debatable" is presented nor has our research discovered such a case.[8] The present case illustrates these general principles. Because summary judgment was entered in favor of the City, GRHA is entitled to the most favorable view of the record. It is apparent from that record that some questions regarding the reasonableness of the City's legislative findings must be determined on the basis of expert testimony. *See* Part I(c)2, *infra.* While it would be

---

7. Obviously, if the non-movant files no response or otherwise fails to deny the movant's undisputed material facts, the non-movant may lose the benefit of whatever reasonable inferences might otherwise have been available. *See* Rule 74.04(c)(2). In that circumstance, summary judgment might be appropriate.

8. For a case involving the "fairly debatable" test and reversing the grant of summary judgment, see *Home Building Company v. Kansas City*, 609 S.W.2d 168 (Mo.App. W.D.1980).

possible at trial to weigh the evidence offered by the testifying experts, such is not the case where the same question is presented in the context of a motion for summary judgment. In that context, the non-movant's evidence must be accorded the benefit of all reasonable inferences. Keeping these general principles in mind, we consider each of the City's challenged legislative findings in sequence.

### 1—The City's Blight Finding

■ In three separate points, GRHA claims that the City's blight finding was not supported by substantial evidence. As already noted, the City asserts that its finding of blight was appropriate to the extent that the Area suffers from inadequate street layout and conditions that "endanger life or property by fire and other causes" to an extent that "constitutes an economic or social liability." *See* Section 99.805(1).

On the issue of inadequate streets,[9] GRHA's petition asserted that the Area's "street layout is allegedly inadequate for the mixed-use development anticipated by the City of St. Peters, but no finding was made as to the layout's inadequacy for the land as it currently exists, namely, as agricultural land."

As support for its motion for summary judgment, the City attached an exhibit consisting of the redevelopment plan adopted by the Board in ordinance 3156. That document recites that: "Route 370, which runs through the middle of the Redevelopment Area, provides excellent regional access. However, significant access and circulation improvements will need to be made if the optimum development is to be realized." An appendix to the redevelopment plan also notes that "the local road system serving the Redevelopment Area

and providing access to Route 370 is inadequate and substandard for mixed-use development anticipated in the Amended Comprehensive Plan for the City of St. Peters."

The City thus attempts to negate GRHA's claim that the roadways are sufficient for present conditions by asserting that those roadways will be inadequate for contemplated future uses. As already noted, the TIF Act defines a blighted area in terms of *present conditions and uses.* Section 99.805(1). Nonetheless, the City's motion contains no assertion that the Area suffers from "defective or inadequate street layout ... in its present condition and use." *See id.* As a consequence, the City has not established a prima facie case for its argument regarding the street layout, and the entry of summary judgment for that reason would be error.

Because the record does not establish the City's right to judgment as a matter of law on the question of street layout, we turn to the question of "the existence of conditions which endanger life or property by fire and other causes."[10] *See id.* The City argued before the trial court that the Area suffers from a risk of flooding and that "there can be no dispute that the risk of flooding is detrimental to the public health, safety, morals or welfare." Notwithstanding the City's confidence, GRHA does dispute the point, arguing the beneficial effects of flooding on agricultural land. Of potentially greater legal significance, GRHA asserts that the City has failed to offer any evidence that would establish the degree and extent of any flooding that occurs in the Area.

GRHA thus raises both legal and factual issues concerning flooding in the Area.

---

**9.** This issue is raised as Point IV in GRHA's appellate brief.

**10.** This issue is raised at Point III in GRHA's appellate brief.

While conceding that the Area experienced flooding in 1993, when large portions of the County were underwater, GRHA does not concede that the Area has otherwise experienced significant flooding. GRHA thus asserts that the degree and extent of flooding in the Area is a disputed fact question, necessitating a trial. The City argues that, since the fact of at least some flooding is conceded, no fact issue need be tried. This reasoning is flawed to the extent that it addresses only the fact question and does not resolve the lingering legal question of whether the conceded facts establish that the flooding at issues is a condition that endangers "life or property by fire and other causes." *Id.* Because the City's summary judgment motion is not supported by evidence that flooding in the Area endangers life or property, it would seem that the City has not established its right to judgment as a matter of law on the basis of flooding.

Finally, GRHA asserted at trial that the City's finding that the Area constitutes an economic liability was arbitrary and capricious. On appeal, GRHA claims that the trial court erred in finding that the City had established, by way of uncontradicted evidence, that the Area constitutes an economic liability.[11]

As described *supra*, a municipality may properly make a finding of blight only where a predominance of factors listed in the first half of section 99.805(1) results in one of the circumstances listed in the second half of that subsection. That such factors may constitute "an economic or social liability" is one of the resulting circumstances listed in the definition. *See* section 99.805(1). Because the City has

failed to establish its right to summary judgment regarding any of the statutory blight factors, it is irrelevant, for purposes of the City's summary judgment motion, whether those factors would lead to the existence of an economic liability, and this opinion need not reach that question. It is sufficient for present purposes to note that the City has failed to establish a right to judgment as a matter of law regarding its finding of blight because the City has failed to establish any of the factors listed in the first half of section 99.805(1).

## 2—The City's But/For Finding

■ Section 99.810 establishes that a municipality must find, before adopting a redevelopment plan, that "[t]he redevelopment area ... has not been subject to growth and development through investment by private enterprise and would not reasonably be anticipated to be developed without the adoption of tax increment financing." GRHA's petition asserts that the City's finding on this issue was arbitrary and capricious.[12]

As support for this portion of its summary judgment motion, the City again relies on statements in the redevelopment plan. The plan asserts that the Area has a "number of serious impediments to redevelopment," specifically noting:

> utility and stormwater improvements, major traffic and roadway improvements and most importantly, flood protection, are well beyond the typical improvements undertaken for new projects in this regional market. Without these improvements, the desired private investment required for the development of the Redevelopment Area cannot proceed.

11. This issue is raised as Point V in GRHA's appellate brief. More precisely stated, it is the predominance of blight factors, rather than the area itself, that must "constitute an

economic or social liability." *See* section 99.805(1).

12. This issue is raised as Point II in GRHA's appellate brief.

Unlike the blight finding, the but/for finding required by section 99.810 does not focus exclusively on the Area's present condition and use. Instead, the but/for finding requires that a municipality assess whether an area would "reasonably be anticipated to be developed without the adoption of tax increment financing." Section 99.810.1(1). This distinction reflects the different purposes served by the two findings. Generally speaking, a finding of blight demonstrates the need for redevelopment, whereas the but/for finding is intended to demonstrate the need for a TIF designation in order to accomplish that redevelopment.

GRHA claims that the issue of flooding cannot properly be considered when assessing the City's but/for finding because a levee is currently being constructed that would remediate any risk of flooding. That levee is being funded by the proceeds of general obligation bonds issued by the City. Since the levee project is already underway, argues GRHA, it cannot be said that flood protection "would not reasonably be anticipated to be developed" without TIF.

In response, the City argues that TIF may be used to retire the general obligation bonds that are currently funding the levee construction. The TIF Act allows municipal obligations, "the proceeds of which are pledged to pay for redevelopment project costs," to be retired with TIF funds. Section 99.840.2.

While the City is correct that TIF funds can be used to retire the general obligation bonds that have been used to fund the levee construction, it does not follow that a purported absence of flood protection can thereby be used to justify the authorization of a TIF district. Indeed, the undisputed facts show that a levee is under construction using funds unrelated to the TIF district created by ordinance 3156. It defies reason to say that a project currently underway without the use of TIF funding cannot be reasonably anticipated to occur without the use of TIF funding. If TIF is ultimately appropriate, the City will be free to retire the general obligation bonds with those funds, but the question under review in this case is whether TIF is appropriate in the first place. In that context, the City's reliance on the necessity of flood protection is misplaced. Setting aside the issue of flood protection, however, the City also argues that the need for utility, stormwater, and roadway improvements in the Area can only be addressed by the creation of a TIF district.

In response to this general argument that the Area is unlikely to develop without TIF, GRHA relies on documents created by the City prior to the enactment of ordinance 3156.[13] Generally, those documents reflect the City's assessment, without reference to the need for TIF, that the completion of Route 370 will encourage development in the Area. GRHA also points out that, prior to the enactment of ordinance 3156, a portion of the Area had already been developed as a golf course. Finally, GRHA extrapolates—from various market value estimates and projections produced by City staff—that the City's proposed redevelopment project would generate a profit for its developer without TIF, and thus could reasonably be anticipated to proceed without the use of TIF.

Having reviewed these materials in the record on appeal, we conclude that that record "contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *See, ITT*

---

**13.** These documents were attached to GRHA's Response in Opposition to the City's Sum-mary Judgment Motion as exhibits 4, 23, and 26.

*Commercial Fin.*, 854 S.W.2d at 382. It would thus appear that GRHA has met its burden to set forth "specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2).

The "fairly debatable" test does not alter this analysis. At a trial on this question, the parties are likely to present expert testimony on each side of the "but/for" question. From such testimony, the trial court may resolve the fact question at issue. On summary judgment, however, the court is required to "accord the non-movant the benefit of all reasonable inferences from the record." *ITT Commercial Fin.*, 854 S.W.2d at 376. In order to find that a question raised by the parties is "fairly debatable," the trial court must weigh and adjudge the extent of the dispute at hand. The summary judgment procedure outlined in Rule 74.04 is an inappropriate vehicle to decide such questions. As our Supreme Court has noted:

> The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Summary judgment tests simply for the existence, not the extent, of these genuine disputes.* Therefore, where the trial court, in order to grant summary judgment, must overlook material in the record that raises a genuine dispute as to the facts underlying the movant's right to judgment, summary judgment is not proper.

*Id.* at 378 (emphasis added). When a trial court uses the summary judgment procedure to find the existence of a "fair debate," as happened here, that finding has gone beyond testing for the mere existence of a genuine dispute. In essence, it would appear that the trial court has used the "fairly debatable" test to disregard "material in the record that raises a genuine dispute." We therefore conclude that summary judgment regarding the City's but/for finding was not proper.

### 3—The City's Conformity Finding

■ In its final point dealing with arbitrary and capricious action, GRHA asserts that the City's conformity finding was not supported by substantial evidence.[14] When adopting a redevelopment plan pursuant to the TIF Act, a municipality must find that the plan adopted "conforms to the comprehensive plan for the development of the municipality as a whole." Section 99.810.1(2). In its motion for summary judgment, the City asserts that the redevelopment plan adopted by ordinance 3156 conforms to the City's comprehensive plan because the comprehensive plan was amended prior to enactment of the ordinance.

As support for this assertion, the City attached two documents to its motion. The first of those documents consists of the minutes of a planning and zoning commission meeting dated December 1, 1999. Those minutes reflect that, during the public hearing portion of the meeting, an "update to the comprehensive plan" was discussed. The minutes then recite that: "Ms. Julie Powers, Director of Planning and Development, presented this update to the Commission for adoption. Chairman Huddleston made a motion and it was seconded by Mr. Oberfeld to adopt this update to the Comprehensive Plan."

The second document relied upon by the City is titled: "Land Use Concept, Proposed Route 370 Development Area, St. Peters, Missouri"[15] and consists of a de-

---

14. This issue is raised as Point XII in GRHA's appellate brief.

15. The City's memorandum in support of its motion for summary judgment refers to this document as an "Amendment to Comprehensive Plan adopted 12/1/99." However, as de-

scription of proposed land uses in the Area that would be consistent with those described in the redevelopment plan. However, there is nothing on the face of this second document to indicate that it is the "update" adopted by the planning and zoning commission in December of 1999.[16] Having reviewed the record on appeal, this court is unable to find any other material that would demonstrate a connection between these two documents.

In addition to a statement of uncontroverted facts, a summary judgment movant is required to provide "specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." Rule 74.04(c)(1). The City has failed to do so with regard to its finding of conformity. As a consequence, the City has not established a prima facie case on this point, and the entry of summary judgment regarding the finding of conformity was error.

## II—Points VI through XI and Point XIII

Since the validity of ordinance 3156 remains in doubt, we need not reach GRHA's remaining points. If that ordinance is void on the basis of being arbitrary or capricious, we need not reach the questions raised in GRHA's points VI and XIII, both of which assert that the City's subsequent actions were not in conformity with the TIF Act. For similar reasons, GRHA's points VII through XI, all of which challenge the constitutionality of the TIF Act, raise issues that are not ripe for adjudication. We leave the future resolution of those claims, if such resolution is ultimately necessary, to our Supreme Court, which has, in any case, exclusive jurisdiction over such questions. *See* Mo. Const. art. V, sec. 3.

Finally, the City's cross-appeal, claiming that the trial court erred in failing to award attorneys' fees is similarly unripe, given our remand for further proceedings.

## Conclusion

The judgment is reversed and the cause is remanded for further proceedings. We express no opinion regarding the constitutional issues raised in GRHA's petition.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.

---

scribed, *infra,* nothing in the record indicates that this document actually was adopted by the commission on that date.

**16.** While not raised by any party on appeal, we note that the absence of any evidence on the face of this purported "amendment" is unusual. The statute authorizing the planning and zoning commission to adopt and amend the comprehensive plan requires that:

the action taken shall be recorded on the adopted plan or part thereof by the identifying signature of the secretary of the commission and filed in the office of the commission, identified properly by file number, and a copy of the plan or part thereof shall be certified to the council and the municipal clerk, and a copy shall be available in the office of the county recorder of deeds and shall be available at the municipal clerk's office for public inspection during normal office hours.

Section 89.360.